Argued May 5, reversed May 25, 1915.

## MADDEN v. CONDON NAT. BANK.

### (149 Pac. 80.)

**Appeal and Error—Presentation of Grounds of Review in Court Below —Necessity.**

1. Improper argument of counsel cannot be reviewed where there was no exception below to the ruling of the court thereon.

**Trover and Conversion—"Conversion"—What Constitutes.**

2. Conversion consists in the exercise of dominion and control over property inconsistent with, and in denial of, the rights of the true owner or the party having the right to possession.

[As to what constitutes conversion of personal property, see notes in 15 Am. Dec. 151; 24 Am. St. Rep. 795.]

**Trover and Conversion—Defenses.**

3. It is a defense to an action for conversion that plaintiff was not damaged.

**Trial—Instructions—Application to Issues.**

4. In an action for the conversion of collateral security, where defendant alleged that the collateral was still in its possession undisposed of and subject to the conditions under which it was first disposed, an instruction that the question in the case was whether defendant was authorized to make the disposition of the security "admitted by all to have been made" was·erroneous.

From Gilliam: DAVID R. PARKER, Judge.

In Banc.    Statement by MR. JUSTICE BENSON.

This is an action by New Madden and E. L. Madden against the Condon National Bank, a corporation, for damages for the conversion of collateral securities.    In 1909, according to the complaint, the plaintiffs were indebted to the defendant bank in the sum of $4,000, evidenced by two promissory notes.    For the purpose of securing the payment of this debt they delivered the

defendant three promissory notes, of the face value of $2,000 each, which had been executed and delivered to the plaintiff New Madden in 1908. These collateral notes, maturing, respectively, four, five and six years after date, were secured by a mortgage upon 1,360 acres of land, and this mortgage was assigned to defendant; such transfer being signed by both plaintiffs, who are husband and wife. The agreement between plaintiffs and defendant was that defendant should collect the collateral notes and apply the proceeds first to the payment of plaintiff's debt, and deliver the overplus to them, and that, if defendant should collect only enough to satisfy plaintiff's debt, the collateral remaining should be returned to them; that the defendant, wrongfully and fraudulently, conspiring with the makers of the collateral securities, compromised and discharged the notes and mortgage for less than the face value, without notice to plaintiffs and without their consent.

Defendant in its answer admits the allegations relating to the indebtedness and the assignment of the collateral security, but denies that E. L. Madden had any ownership in the collateral notes and mortgage; denies the terms of the contract of assignment as set out in the complaint; denies all of the wrongful acts constituting the alleged conversion; and also denies that plaintiffs, before commencing this action, made demand for return of the securities, or that a return was refused. Defendant then affirmatively alleges that the plaintiff E. L. Madden signed the two notes first mentioned in the complaint as an accommodation maker; that the mortgage was subject and inferior to three other mortgages aggregating $7,285, and accrued interest; that at the time of the assignment of the mortgage of defendant it was authorized to sell, assign, dis-

pose of, or satisfy the same and the notes thereby secured for such sums as, in the defendant's judgment, would be for the best interests of plaintiff New Madden and defendant, giving it full authority to satisfy said mortgage and notes to the same extent as if it were the owner thereof; that at the time of the assignment the fee-simple title to the mortgaged lands was vested in Arthur Madden and Nita Madden, and thereafter the said owners entered into a contract of sale with one Monahan agreeing to sell him a certain 560 acres of the land as described in such contract; that two of the superior mortgages were held by the State of Oregon, and the third one by one Hanley; that the latter mortgage was long overdue, and that Hanley was threatening a foreclosure; that in defendant's judgment a sale under foreclosure would not have realized enough to satisfy the three mortgages which are prior to the collateral lien; that plaintiff New Madden had not supplied defendant with any funds with which to take care of the prior liens, and, acting under the authority given it by the plaintiff New Madden, satisfied the mortgage, and, in lieu thereof, took a deed absolute in form, but intended as a mortgage covering all of section 10, township 4 south, range 22 east of the Willamette Meridian, which was a second mortgage thereon, subject only to a mortgage for $2,450 in favor of the State of Oregon; that defendant did not cancel the collateral notes nor surrender them; that they are still in full force and effect, and are secured by said mortgage on section 10; that defendant still holds the three collateral notes and the mortgage on section 10 as security for the $4,000 debt of plaintiff New Madden, and has been at all times ready, able and willing to transfer said notes and mortgage to said plaintiff upon his payment of the debt for which

they are held as security; that by reason of the fact
that the lands were covered by three superior mort-
gages, and that Arthur and Nita Madden had con-
tracted to sell a portion of said lands, it became neces-
sary to release said mortgage and allow a conveyance
to Monahan of the land contracted to him, the holders
of the several mortgages taking new mortgages on
separate and distinct parcels of the entire tract; that,
as a result of such mutual agreement, 160 acres of
land were conveyed to Hanley in satisfaction of his
lien, and defendant took a second mortgage on section
10, subject only to the state's mortgage for $2,450,
in lieu of the collateral lien; that, if it had not en-
tered into this mutual arrangement and satisfied the
old mortgage, it would have lost all security for the
Arthur and Nita Madden notes; that the plaintiff New
Madden was cognizant of all the proceedings leading
up to the aforesaid mutual arrangement; that he knew
that defendant was joining in said negotiations, and
was intending to release said mortgage and take in
lieu thereof the second mortgage on section 10; that
he made no objection thereto; that he acquiesced there-
in, and attempted to obtain the cash proceeds arising
from the sale which would come, under the terms
thereof, to defendant to be applied on said plaintiff's
indebtedness; that by his acts and omissions he inten-
tionally led defendant to believe that defendant was
acting fully within the scope of its authority in sub-
stituting said mortgage on section 10 for the old mort-
gage on the entire tract, and defendant, relying there-
on, made such substitution, which it would not have
done but for such acts and omissions of said New Mad-
den, and that he should now be estopped from denying
defendant's authority so to do; that since said trans-

actions said New Madden has by word and action ratified the same.

A reply being filed, consisting of denials, a trial was had resulting in a verdict and judgment for plaintiffs, from which defendant appeals.          REVERSED.

For appellant there was a brief over the names of *Mr. T. A. Weinke* and *Messrs. Angel & Fisher,* with an oral argument by *Mr. Weinke.*

For respondents there was a brief with oral arguments by *Mr. M. D. Shanks* and *Mr. Charles Horner.*

MR. JUSTICE BENSON delivered the opinion of the court.

Defendant's first assignment of error is that the trial court erred in denying its motion for a nonsuit. We need only to say that a careful examination of the plaintiff's testimony discloses sufficient evidence to justify a submission of the case to the jury, and the motion was properly denied.

1. Defendant assigns as error some improper remarks of counsel for plaintiff in his argument to the jury; but, while the remarks were unquestionably improper, there is no sufficient record of any exception to the ruling of the court, and therefore they cannot be considered here.

2, 3. The court gave the following instructions to the jury:

"Conversion consists in the exercise of dominion and control over property inconsistent with, and in denial of, the rights of the true owner, or the party having the right of possession. It is the exercise of such a claim or right or dominion over the property as assumes that he is entitled to the possession, or to deprive the party of it. The very assuming to

one's self the property and right of disposing of another man's goods is a conversion. The intent with which the wrongful act is done on the part of the defendant is not an essential element of the conversion. It is enough that the true owner has been deprived of his property by the unauthorized act of some person who assumes dominion or control over it. Any abuse of possession lawfully acquired, or any breach of the trust, under which the collateral security is placed, is a conversion. And it is a rule of law that the conversion of a part amounts to a conversion of the whole of a chattel when the circumstances show a purpose to control or dispose of the whole of it, or whenever the remaining part is thereby impaired in value or utility. And it matters not that it resulted in no profit or benefit to the defendant, or resulted in a benefit to the plaintiffs."

This instruction in a general way correctly states the law as to conversion, except as to the last sentence, which advises the jury that:

"It matters not that it resulted in no profit or benefit to the defendant or resulted in a benefit to the plaintiffs."

It is true that there are many authorities which sustain this doctrine, but we think that good reasoning and simple justice sustain the opposing line of cases whose reasoning is well expressed in the case of *Exeter Bank* v. *Gordon,* 8 N. H. 80, in the following language:

"There seems to be no reason to suppose that the compromise was not, on the whole, highly advantageous to the Gordons and the bank. And the complaint of this defendant is not that anything was, in fact, lost by it, but that it was made without authority. If the bank had wrongfully taken the note and converted it to their own use, they would have been answerable only for the value: [*Cortelyou* v. *Lansing*] 2 Caines' Cases, 215; [*Gray* v. *Portland Bank*] 3 Mass. 364 [3 Am. Dec. 156]; [*Rogers* v. *Crombie*] 4 Greenl.

[Me.] 274; [*Clowes* v. *Hawley*] 12 Johns. [N. Y.] 484; *Clowes* v. *Hawley,* 2 B. & P. 451; [*Todd* v. *Crook-shanks*] 3 Johns. [N. Y.] 432; [*Murray* v. *Burling*] 10 Johns. [N. Y.] 172; *McLean* v. *Walk,* 10 Johns. [N. Y.] 471; 3 Starkie's Ev. 1503; 8 Taunton, 264; *Ingalls* v. *Lord,* 1 Cow. [N. Y.] 240; [*Day* v. *Whitney*] 1 Pick. [Mass.] 503; *Kingman* v. *Pierce,* 17 Mass. 247; [*Jones* v. *Farley*] 6 Greenl. [Me.] 226; 1 Barnw. & Adolphus 528; 1 C. & P. 625; [*Hussey* v. *Manufacturers & Merchants' Bank*] 10 Pick. [Mass.] 415. And we are of opinion that, if the compromise in this case is, under the circumstances, to be considered as a wrongful disposition of the note, which was lawfully in the possession of the bank, it cannot and ought not to place the bank in a worse situation than it would have been, if the note had been wrongfully taken from the possession of the owner and converted to the use of the bank. It is said that this case is analogous to the case if an executor or administrator who compounds a debt due to the estate of the deceased for less than the amount. But how is the law in such a case? The general rule is that a release of a certain debt due to the testator makes it assets in the hands of the executor, because it shall be intended that he would not have made the release unless the money had been paid. And it seems to have been holden in former times that a release in such a case was conclusive evidence that the executor had received the money; and he was chargeable with the whole amount, although he might have received only a part: Lovelass on Wills, 48; [*Hooker* v. *Bancroft*] 4 Pick. [Mass.] 50; Wentworth's Executors, 70, 71, 158, 159; Comyn's Digest, 'Administration,' I, 1 and 2; Cro. Eliz. 43; T. Jones, 88; 2 Levintz, 189; [*Dawes* v. *Boylston*] 9 Mass. 352 [6 Am. Dec. 72]. But in modern times a more reasonable and equitable view of the subject seems to have been gaining ground. In many cases an executor can obtain nothing unless by way of compromise; and it is supposed that no court would now hold an executor liable for the whole debt in a case where he had, upon

76 Or.—24

a compromise on the whole advantageous to the estate, released the debt on receiving a part; for that would be to make him liable for the whole, merely because by his care and diligence he had been able to save a part: 2 Eq. Ca. Ab. 454, pl. 13; 3 P. Williams, 381; [*De Diemar* v. *Van Wagenen*] 7 Johns. [N. Y.] 411, 412. If, then, we follow that analogy in this case, we must hold that the bank is liable only for what it received, if the compromise was on the whole advantageous to all concerned.''

In the recent case of *State* v. *West,* 74 Or. 112 (145 Pac. 15), this court has held that in an action for conversion no recovery can be had unless the plaintiff has actually suffered injury. The trial court therefore committed reversible error in giving this instruction. For the reasons above suggested, it was also error for the court to refuse the following requested instruction:

''I instruct you that, if you find that the defendant, without the consent of plaintiffs, exchanged securities, then before the plaintiffs can recover of the defendant they must have proven to you by a preponderance of the evidence that by such exchange they have been damaged.''

4. Instruction No. 7 as given by the court is as follows:

''I instruct you that the material consideration for you, gentlemen of the jury, in this case is whether or not the Condon National Bank was authorized by New Madden and E. L. Madden to make the disposition of the pledged securities admitted by all to have been made, and whether or not the said New Madden and E. L. Madden afterward ratified the action of the bank. Either authorization before the transaction or ratification after the transaction, under such circumstances as would make you believe that authorization or ratification was definitely intended by the said New Madden and E. L. Madden, would be a defense.''

It will be noted that the court uses the expression, "the disposition of the pledged securities admitted by all to have been made." An examination of the pleadings and the evidence discloses that it is not admitted by the defendant that any disposition of the collateral notes was made, but that, on the contrary they are still in its possession uncanceled, undisposed of and held subject to the conditions under which they were first deposited. It follows that the use of such language was clearly erroneous.

There are other assignments of error, but the views herein expressed sufficiently cover the material questions involved.

The judgment of the lower court is reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.