Argued January 14; affirmed January 26; rehearing denied
February 14, 1943

# INGALLS *v.* ISENSEE

(133 P. (2d) 614)

Before BAILEY, Chief Justice, and BELT, ROSSMAN,
LUSK and HAY, Associate Justices.

*Harry G. Hoy,* of Portland (Rex Kimmell, of Salem, and Hoy & Prag, of Portland, on the brief), for appellant.

*Arthur I. Moulton,* of Portland (Moulton & Davis, of Portland, on the brief), for respondent.

BAILEY, C. J. The defendant, William Isensee, has appealed from a judgment against him and in favor of the plaintiff, Clara Ingalls, for damages for personal injuries sustained by her when she slipped and fell on the exterior stairway at the front entrance of the defendant's apartment house in the city of Portland.

The stairway was about ten feet wide and was set between outer walls of the building. It consisted of thirteen steps and extended from the sidewalk to the first-story entrance. The upper part of the building projected over the stairway, leaving an opening ten or twelve feet high above the bottom step. The steps were made of concrete or cement, with a painted surface, and were slippery at all times, particularly so when wet or covered with snow. There was no hand rail along the sides of the building that formed the walls of the stairway. The lower steps were exposed to the weather, and when the wind came from a westerly direction snow and rain were blown in upon the stairway as high as the sixth or seventh step.

The accident occurred on March 28, 1936. Rain and snow had fallen intermittently during the afternoon of that day. Mrs. Ingalls, a tenant of the apartment house,

had been away from the building and returned to her apartment about 5 o'clock, at which time there was snow about two inches deep on the lower steps and less deep as the stairway rose. At approximately 6:15 o'clock in the evening Mrs. Ingalls again left the apartment house and went down the exterior stairway at the front of the building. On reaching the third from the bottom step, her feet slipped on the snow and ice on it and she fell and was injured.

The complaint alleges that the steps were "constructed of a smooth, slick material"; that they "were so constructed and maintained that snow and rain would blow in upon the same"; that the defendant "negligently and carelessly caused and permitted snow and ice to fall and accumulate thereupon, and negligently and carelessly failed to remove the same therefrom"; and that the defendant had knowledge of the condition of the steps at the time of the accident. The defendant is further charged with negligence in failing to provide a hand rail along the steps.

After all the testimony was taken, the defendant moved for a directed verdict in his favor, on the ground that the evidence failed to show that he had been notified or had knowledge of the condition of the steps at the time of the mishap. The trial court denied the motion, and the propriety of that ruling is the only question here presented.

Mrs. Harry Wage was the manager of the apartment house and lived in the building. She had been there as manager for about a year prior to March 28, 1936. Her testimony was that she "always kept track of those steps on stormy days". Asked why she did that, she thus testified:

"A. Well, as manager you feel responsible for people going in and out and you want to see that

everything is kept in good order. We have children around the apartment there and they invariably throw.things around and you got to keep a watch on things.

"Q. On stormy days you always kept a lookout on those steps?

"A. At any time.

"Q. You knew, as a fact, those steps, whenever there was any snow and the wind was blowing that the snow blew right in on those steps?

"A. No; it didn't blow in on them unless the wind was directly in the west.

\* \* \*

"Q. . . . You have told us you were out on those steps within the half hour before six-thirty looking at them; that is the fact, was it?

"A. I went out to see if the arc light handled by the P. E. P. Company was turned on.

"Q. Any condition that existed there between five-thirty and six,—you knew what the condition was between five-thirty and six?

"A. The condition between five-thirty and six, the steps was dry, with the exceptions people went up and down them.

"Q. The answer to my question directly is, whatever the condition of the steps was between five-thirty and six you, in your capacity as manager of the apartment, knew about it?

"A. Certainly; that was my duty.

"Q. You knew what the condition was between five-thirty and six?

"A. Yes, sir."

Mrs. Ingalls and Mr. Tillotson, who was with her at the time of the accident, both testified that they had entered the building at 5 p. m.; that there was then snow two to three inches deep on the ground and on the lower steps; and that when they left the building at or

about 6:15 o'clock there was as much snow on the steps as when they entered, if not more.

A copy of the weather bureau report for March 28, 1936, was introduced in evidence by the defendant and as far as material here is as follows:

> "Snow fell from 12:43 P. M. to 1:15 P. M.; from 2:53 P. M. to 3:20 P. M.; rain mixed with snow fell from 3:20 P. M. to 3:40 P. M.; snow fell from 4:26 P. M. to 4:34 P. M.; rain fell from 4:34 P. M. to 5:00 P. M. when it turned to snow which continued into the night. The snow at the station did not accumulate on the ground until after 5:00 P. M. when the fall was recorded as being heavy and 0.6 inch falling by 5:30 P. M. Only a trace fell thereafter."

■ There was, in our opinion, substantial evidence from which the jury could have found that there was snow on the steps at 5 p. m. and thereafter and that Mrs. Wage knew or should have known the condition of the steps at the time of the accident. The court did not commit error in refusing to grant a directed verdict in favor of the defendant on the ground specified in the defendant's motion.

■ A large part of the defendant's brief is devoted, as was the oral argument of his counsel before us, to the contention that the plaintiff by her testimony proved that her own negligence contributed to her injury, and that the trial court erred in not directing a verdict in favor of the defendant on that ground. The suggestion of the plaintiff's contributory negligence seems to have been an afterthought of the defendant. It was not pleaded in his answer, nor did any question of contributory negligence of the plaintiff arise during the trial of the case in the circuit court, but is here mentioned for the first time.

■ It is well settled that the motion of an adverse party for a nonsuit or for a directed verdict must specify the grounds therefor, and that when such a motion is denied the grounds stated therein are conclusive on the moving party and he may not urge for the first time on appeal additional grounds for the motion: *Ferguson v. Ingle*, 38 Or. 43, 44, 62 P. 760; *Meier v. Northern Pacific Railway Company*, 51 Or. 69, 75, 93 P. 691; *Robertson v. State Industrial Accident Commission*, 114 Or. 394, 404, 253 P. 684; *Cave v. Brown & McCabe*, 128 Or. 286, 291, 274 P. 505; *Blue v. City of Union*, 159 Or. 5, 19, 75 P. (2d) 977. "The reason for this rule", the court stated in *Ferguson v. Ingle*, supra, "is found in the fact that the appellate court will consider only such questions as have been presented to the trial court at the proper time, and in an appropriate manner; and when it appears that the question sought to be reviewed was not thus submitted to such court the presumption that its decision thereon is correct ought to prevail."

The defendant relies on *Wallace v. Portland Railway, Light & Power Co.*, 103 Or. 68, 73, 204 P. 147, as authority for his assertion that it was the duty of the trial court to direct a verdict for the defendant on the ground that the plaintiff was chargeable with contributory negligence, whether or not contributory negligence was pleaded as a defense or assigned as a reason for requesting a directed verdict. In that case the court had under consideration the question of whether it was necessary for the defendant to plead the plaintiff's contributory negligence in order to avail himself of it as a defense. It was held to be necessary so to plead, "except perhaps in those rare instances where it [contributory negligence] conclusively appears from the

testimony adduced by plaintiff.'' We are not here concerned with a question of pleading. The case on which the defendant relies does not have any bearing on what the appellate court will consider in connection with a motion for a directed verdict.

We find no error in the judgment appealed from, and it is therefore affirmed.