Argued July 7, reversed with instructions December 7, 1972

SELLERS ET UX, *Appellants, v.* LOOPER ET UX, *Respondents.*

503 P2d 692

*Kim L. Jordan,* Grants Pass, argued the cause for appellants. With him on the briefs were Johnson, Sloan & Jordan, Grants Pass.

*Oscar R. Nealy,* Grants Pass, argued the cause for respondents. On the brief were Donald H. Coulter, and Myrick, Coulter, Seagraves & Nealy, Grants Pass.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

This is an action for damages based on fraudulent misrepresentations pertaining to the well on property plaintiffs purchased from defendants. The jury returned a verdict in favor of plaintiffs. On motion, the trial court granted judgment in favor of defendants notwithstanding the verdict, and the plaintiffs have appealed.

Plaintiffs assign as error the court's allowing the defendants' motion for judgment notwithstanding the verdict. They contend that such a motion can be based only on the grounds provided in ORS 18.140 (1) and that the motion for a directed verdict was a shotgun assertion and did not specify any of the grounds.

After the plaintiffs had presented their case-in-chief, the defendants moved for an involuntary nonsuit (incorrectly referred to as motion for directed verdict) and stated:

"* * * [W]e would submit that the Plaintiff has [plaintiffs have] not carried their burden and move for a directed verdict against the Plaintiffs, in favor of the Defendant."

After both parties rested, the defendant moved the court "for a directed verdict for the same reasons as argued in the motion earlier for involuntary nonsuit, in that we believe that the evidence presented by the Plaintiffs and Defendants, there is no question of fact raised on which reasonable men could differ."

We assume that at the time they moved for a directed verdict by reference to their previous motion for a nonsuit, that defendants were contending that plaintiffs had not presented evidence sufficient to support a verdict in their favor. Defendants argue here that the plaintiffs had not submitted evidence sufficient to establish fraudulent representations on the part of defendants to induce plaintiffs to enter into the contract to purchase the property.

A motion for a directed verdict or for a nonsuit must specify the grounds therefor and unless it does so, we should not consider the motion on review.

Further, the denial of a motion for a nonsuit is not a ground for a judgment *n.o.v.* as provided in ORS 18.140. *Vancil v. Poulson,* 236 Or 314, 324, 388 P2d 444 (1964); *Clarizo v. Spada Distributing Co., Inc.,* 231 Or 516, 520, 373 P2d 689 (1962); *Carlson v. Steiner,* 189 Or 255, 220 P2d 100 (1950). The court denied the motion, and the record indicates that the trial court and

both counsel understood defendants' motion and its intendment.

The plaintiffs also contend: "Statements regarding quality, value or the like may be considered misrepresentations of fact where the parties are not on an equal footing and do not have equal knowledge or means of knowledge" and the "[d]ecision of whether a representation is of fact or of 'opinion' is always left to the jury and therefore the order setting aside the jury's verdict should not have been entered."

Interwoven with defendants' contention that the evidence was insufficient to justify the plaintiffs' verdict is their argument that the representation of a "good well" was "mere inclusion of adjectival words of commendation" or "opinion" and, therefore, not actionable.

In *Holland v. Lentz,* 239 Or 332, 345, 397 P2d 787 (1964), we held:

"* * * It is recognized, however, that statements of opinion regarding quality, value, or the like, may be considered as misrepresentations of fact, that is, of the speaker's state of mind, if a fiduciary relation exists between the parties as, for example, representations of value made by a real estate broker to his principal: *Melgreen et ux v. McGuire, Inc. et al,* 214 Or 128, 137, 327 P2d 1114; or where the parties are not on an equal footing and do not have equal knowledge or means of knowledge: [Citations omitted]."

*See also, Lackey v. Ellingsen,* 248 Or 11, 13, 432 P2d 307 (1967).

Prosser treats the matter by stating:

"A statement of opinion is one which either indicates some doubt as to the speaker's belief in the

existence of a state of facts, as where he says, 'I think this is true, but I am not sure,' or merely expresses his judgment on some matter of judgment connected with the facts, such as quality, value, authenticity and the like, as where he says, 'This is a very fine picture.' It is not, however, the form of the statement which is important or controlling, but the sense in which it is reasonably understood.

\* \* \*

"It is stated very often as a fundamental rule in connection with all of the various remedies for misrepresentation, that they will not lie for misstatements of opinion, as distinguished from those of fact. \* \* \*

"But this explanation is scarcely adequate, since an expression of opinion is itself always a statement of at least one fact—the fact of the belief, the existing state of mind, of the one who asserts it. \* \* \*" Prosser, Torts (4th ed) 720-21.

The evidence discloses that defendants owned a home and acreage located in Illinois Valley near the city of Cave Junction, Josephine County, Oregon. In May of 1969 defendants executed a listing, or employment, agreement to sell their property with Mrs. McLean, a real estate broker. This agreement included information given the realtor by the defendants. Mrs. McLean testified:

"I asked the Loopers, 'Do you have a good well?' and the comment came back, 'Yes, we have a good well.'

"\* \* \* \* \*

"Q To your knowledge, were they [defendants] aware of the way you intended to sell the home, that you intended to represent it as a family home?

"A I believe they were, because I had mentioned it was a nice home for a family because of its size.

"Q Then at that time did they tell you any reason it might not be a nice home for a family?
"A No."

On July 28, 1969, plaintiffs contacted Mrs. Mc-Lean. They desired to buy a house large enough for plaintiffs and their six children. Mrs. McLean further testified:

"Q * * * At the time you told them that there was a good well on the property, did you tell them that for the purpose of inducing them to buy the Loopers' property?
"A A good well on any property is a tremendous inducement. If you have a good well, that's a selling point.
"* * * * * *

"Q * * * At the time you represented to Mr. and Mrs. Sellers that there was a, quote, good well on the property, what did you mean to convey by that, what meaning did you mean to get across to prospective buyers?
"A The meaning I've always inferred before, and I inferred at that time, was that it was an adequate well, there was plenty of water.

"Q Plenty of water for what?
"A Well, I told them at the time that you couldn't go out and irrigate the pasture, if they wanted to irrigate pasture they would perhaps have to put down an irrigation well, but there was a good well, and this was understood to be adequate for household, and usually that includes a modest garden * * *."

In the early evening of July 28, 1969, the plaintiffs, with the realtor, met the defendants and inspected the house and "looked at the well and pumphouse." No specifications as to the depth of the well or how many gallons it would pump per hour were given the plaintiffs and the realtor did not have this

information. They returned to the realtor's office; she prepared the earnest money agreement; defendants signed the agreement that evening, and plaintiffs signed it and made the down payment. Mr. Looper testified:

"Q  Did Mr. and Mrs. Sellers talk to you about their family?

"A  No. I never knew they had a family until Mrs. McLean, I think mentioned they had some children.

"Q  When did she mention that?

"A  The next day or two when she came up with the papers [real estate sales contract].

"Q  Did she tell you how many children they had?

"A  Well, I think she did. I think she mentioned they had six.

"Q  But you had no idea that they had six children the night that they looked at the property, did you?

"A  No. I didn't know they had any."

On August 15, 1969, plaintiffs moved onto the property and on August 22, 1969, the well went dry. Plaintiffs drilled two additional wells but found no water.

■ We conclude that there was sufficient evidence to submit the case to the jury. A reasonable person, in this day of modern household conveniences, could believe that a "good well" meant a well with adequate water for family household use and the plaintiffs relied on this representation. The evidence shows that defendants knew that the water in the well got low in the fall of the year and they had to be careful in flushing the indoor toilet or the well would probably go dry. The plaintiffs were not on equal footing with the defendants and did not have equal knowledge of the

adequacy or lack of adequacy of the water in the well. *Holland, supra* at 345. The jury returned a verdict for the plaintiffs and "[t]hese matters are ordinarily for the determination of the jury." *Smith v. Anderson,* 74 Or 90, 95, 144 P 1158 (1914). *See also, Horner v. Wagy,* 173 Or 441, 457, 146 P2d 92 (1944); *Hansen v. Holmberg,* 176 Or 173, 185, 156 P2d 571 (1945).

■ The defendants challenge the sufficiency of the complaint in this court for the first time and contend that the complaint fails to state facts sufficient to constitute a cause of action in that the alleged misrepresentation is only a statement of opinion. On appeal, a complaint not demurred to or moved against in the trial court will have every reasonable inference resolved in support thereof. *Bandy v. Norris, Beggs & Simpson,* 222 Or 1, 5, 342 P2d 839 (1960); *Hendricks v. Sanford,* 216 Or 149, 159, 337 P2d 974 (1959).

■ It is apparent from the transcript that the defendants were not misled by the allegations in the complaint. Based on our holding in this case and in the absence of an attack on the complaint in the court below, we find the same to be sufficient.

Reversed with instructions to reinstate the jury's verdict.