Argued July 8, reversed and remanded October 16,
petition for rehearing denied November 12, 1975

REMINGTON, *Appellant, v.* LANDOLT ET AL,
*Respondents.*
541 P2d 472

*Douglas E. Kaufman,* of McMinimee & Kaufman, Tillamook, argued the cause and filed the briefs for appellant.

*Howard R. Lonergan,* Portland, filed the brief for respondents.

TONGUE, J.

This is an action for conversion brought by a husband who had evicted his estranged wife from the family home near Tillamook when he learned that she had filed for a divorce. The wife claimed that plaintiff had previously beaten her, which he denied. With the assistance of the defendants, including her father and brother, plaintiff's wife took a moving van to the house and removed what she claimed to be furniture, furnish-

ings and other items belonging to her. The case was tried before a jury, which returned a verdict in favor of the defendants. Plaintiff appeals from the resulting judgment.

1. *Plaintiff's request for a peremptory instruction on liability.*

Plaintiff first assigns as error the refusal of the trial court to give the following instruction:

"I instruct you to find your verdict against the defendants and in favor of the plaintiff in such amount of damages as you shall find plaintiff is entitled to receive in conformity with the evidence in this case and the law pertaining to the measure of damages which I shall hereafter give to you."

In support of this assignment of error plaintiff contends, among other things, that such a requested instruction is "tantamount to a directed verdict"; that defendants admit taking several of the items of personal property described in the complaint; that it was admitted that at least two of such items belonged solely to plaintiff (a sofa and a green swivel chair); and that defendants failed to return such property upon plaintiff's demand.

In response, defendants contend, among other things, that a wife has as much right as the husband to possession of the marital home, including its furnishings; that even as to items belonging to plaintiff it was a jury question whether defendants were guilty of conversion because good faith is a factor to be considered in determining whether there has been a conversion; that defendants acted in good faith in that plaintiff's wife had been advised by her attorney that she was entitled to take from the home items of furniture, furnishings and other items belonging to her; and that defendants took only the items which she said belonged to her.

■ The merits of most of these contentions are discussed under other assignments of error. But regardless of whether defendants are correct in these contentions, we hold that the trial court did not err in refusing to give this requested instruction.

■ We have held that a request for an instruction that the jury return a verdict for the defendant may be considered as a motion for a directed verdict. *Becker v. Pearson,* 241 Or 215, 222, 405 P2d 534 (1965), citing *Eitel v. Times, Inc.,* 221 Or 585, 588, 352 P2d 485 (1960). More recently, however, in *Lithia Lumber Co. v. Lamb,* 250 Or 444, 450-51, 443 P2d 647 (1968), we said:

> "* * * A request for a peremptory instruction may, for certain purposes under ORS 18.140, be treated as a motion for a directed verdict. The practice is, however, disfavored, and should be limited to the situation in which it has been countenanced. See *German v. Kienow's Food Stores,* 246 Or 334, 425 P2d 523 (1967). In the case at bar, there is no reason to treat requested instructions as a motion for a directed verdict. A proper motion should have been made."

In *Becker* and *Eitel,* and also in *Inwall v. Transpacific Lumber Co.,* 165 Or 560, 574, 108 P2d 522 (1941), the request was that the jury be instructed to return a verdict in favor of the defendant. The same was true of the dictum in *German v. Kienow's Food Stores,* 246 Or 334, 338, 425 P2d 523 (1967). It may be that no valid distinction can be made between such a request by a defendant and a request by a plaintiff that the jury be instructed to return a verdict in favor of the plaintiff on the issue of liability, leaving only the question of damages for consideration by the jury.

Thus, in a personal injury case, it may be proper for the plaintiff to request an instruction to the jury

that the evidence of liability was uncontradicted and that the jury should return a verdict in favor of plaintiff and against defendants and award plaintiff damages for his injury in such amount as it finds that he is entitled to recover under the evidence and in accordance with further instructions by the court. It may also be proper to consider such a requested instruction as "tantamount" to a motion for a directed verdict on the issue of liability. In such a case, however, the grounds for such a requested instruction would be obvious and such an instruction would be sufficiently clear and complete so as not to be confusing to the jury.

■ We have established the rule that a motion for directed verdict must state the grounds on which it is based; that otherwise this court will not consider such a motion; and that grounds not stated at that time will not be considered by this court. *Sellers v. Looper,* 264 Or 13, 15, 503 P2d 692 (1972); *Vancil v. Poulson,* 236 Or 314, 320, 388 P2d 444 (1964); *Edvalson v. Swick,* 190 Or 473, 478, 227 P2d 183 (1951); *Ingalls v. Isensee,* 170 Or 393, 398, 133 P2d 614 (1943); and *Bergholtz v. City of Oregon City,* 116 Or 18, 22, 240 P 225 (1925).

In *Vancil v. Poulson, supra,* we said (at 320):

"The reason for the procedural rule that an appellate court will not consider a ground for a motion for a nonsuit or a directed verdict that was not asserted at the time the motion was made is apparent. An appellate court is a court of review. It reviews decisions on legal issues made by the trial court. The trial court in turn decides legal questions presented to it by the parties. * * *"

The same rule has been applied when a defendant has both moved for a directed verdict and also requested a peremptory instruction to return a verdict in favor of defendant. Thus, in *Woods v. Dixon,* 193

Or 681, 683, 240 P2d 520 (1952), we held in such a case that:

> "* * * No grounds having been stated for either the motion or the requested instruction, we cannot consider these assignments of error. *Ingalls v. Isensee,* 170 Or 393, 133 P2d 614."

In *Eitel v. Times, Inc., supra,* and *Inwall v. Transpacific Lumber Co., supra,* the requested instruction by these terms stated the supporting grounds and in *Becker v. Pearson, supra,* such grounds were obvious. In this case, however, the grounds for plaintiff's requested peremptory instructions were neither stated nor obvious—at least as applied to all of the various items which plaintiff's complaint alleged to have been converted by defendants.

It is also implicit that another reason for this rule is that the trial court should have an opportunity to consider and rule upon the grounds for a motion for a directed verdict before this court can properly be asked to do so. Thus, in *Lithia Lumber Co. v. Lamb, supra,* several defendants were involved, with the result that the requested peremptory instruction "would have resulted in directed verdicts in favor of each of the defendants separately." Under these circumstances, this court said (at 450):

> "* * * A motion for a directed verdict * * * should have been made, as it would have forced the trial court to rule on the sufficiency of the evidence of joint liability. * * *"

In this case, plaintiff's complaint charged defendants with converting a large number of items of personal property which fell into at least four categories: (1) two items (a sofa and a swivel chair) which admittedly belonged to plaintiff and were taken by defendants; (2) several items (including a diamond ring and silver cuff links) which also admittedly belonged to

plaintiff, but which defendants denied having taken; (3) other items which, according to plaintiff, belonged to plaintiff before the marriage and which were admittedly taken; and (4) items admittedly taken which were acquired during the marriage and in which plaintiff's wife claims joint ownership with plaintiff.

As to the two items included in (1), plaintiff would have been entitled to a directed verdict on the issue of liability, if clearly limited to those items, leaving only the issue of damages. As to the items included under (2) and (3), however, there was a conflict in the testimony and as to the items included under (4) there was not only a conflict in the testimony, but questions of law to be resolved.

Thus, defendants contended, among other things, that plaintiff's wife had an equal right to the possession of such items, a contention denied by plaintiff and that she also had a right of "self-help." Defendants also contend that the jury was entitled to consider their good faith in believing that plaintiff's wife was entitled to the possession of these items, a question never decided by this court, at least in the sense that good faith alone may provide a defense in such an action.

Nowhere in the record does it appear that plaintiff's attorney ever informed the trial court of the grounds on which plaintiff was entitled to a peremptory instruction on the issue of liability as to any of the categories of items of personal property which plaintiff claimed to have been converted.

The peremptory instruction, as requested by plaintiff, would also have been confusing to the jury, in our opinion. Upon a literal reading of its terms it appears that if given, the jury could well have understood that it was required to return a verdict in favor of

plaintiff only if it was proper to do so upon following other instructions by the court. If understood in that sense it would not have been error to either give or deny such an instruction.

On the other hand, that instruction could well have been understood by the jury to not only require that it return a verdict awarding damages to plaintiff in some amount against all of the five defendants, but because of its failure to make any distinction between the various categories of items allegedly taken by them the impression may well have been conveyed to the jury that defendants were liable for the conversion of all of such items, as a matter of law, and that the only remaining question was the issue of damages, which could include the value of each and all of the items which plaintiff's complaint alleged to have been converted by the defendants.

For these reasons, we hold that the trial court did not err in refusing to give plaintiff's requested peremptory instruction on liability, wholly aside from the question of substantive law involved, which we shall next consider.

2. *Defendants' claim of joint ownership and right to possession of personal property.*

Among other assignments of error, plaintiff contends that the trial court erred in giving the following instruction:

"Now, for their second answer and partial affirmative defense they allege that the personal property set forth in paragraph 1 of the complaint, except the silverware, cassette tape and the man's diamond ring, was the property of Joyce Remington, then the wife of plaintiff, and said Joyce Remington was with plaintiff a co-owner and entitled to joint possession of the house and real property alleged in paragraph 1 of the complaint, and entry

of the defendants in said house and on said real property and their removal of said personal property was done at the invitation and direction of said Joyce Remington.

"\* \* \* \* \* \*

"*If you find that Mrs. Remington had* the right to the immediate possession or *the joint right with the plaintiff, her husband, of the immediate possession of the property in question,* or some part thereof, then the defendants would not be guilty of conversion of that particular property, if any.

"\* \* \* \* \* \*

"Therefore, a right to possession in Mrs. Remington on April the 27th, 1973 of the property, or some part thereof, is a good defense by these Defendants as to conversion of the property, or so much of the property to which Mrs. Remington had the right to possession." (Emphasis added)

Plaintiff also assigns as error the refusal of the trial court to withdraw defendants' affirmative defense as set forth in the first paragraph of the foregoing instruction.

At the outset it should be noted that this affirmative defense, as pleaded, refers only to items of personal property which were alleged to be "*the* property" of Joyce Remington. As previously noted, there was evidence that *some* of the items of personal property taken from the house by defendants may have been the sole property of Joyce Remington. Thus, to the extent that the alleged conversion involved the taking of such items, it was proper to submit this partial affirmative defense to the jury.

The primary controversy in the case, however, involved the taking of items of personal property acquired during the marriage. Defendants contended that Joyce Remington had the "joint right with the

plaintiff, her husband, of the immediate possession" of all such items of personal property, with the result that the taking of such items by defendants "at the invitation and direction of said Joyce Remington" would not constitute a conversion.

■ The second paragraph of the foregoing instruction accepted this contention as a correct statement of the law. We hold, however, that this contention and instruction is not a correct statement of the law and that it was prejudicial error to give that instruction.

The test to be applied in a conversion case in which a defendant alleges as a defense that he acted at the direction of the person who was entitled to the immediate possession of the converted personal property is set forth in Restatement of Torts § 249 (1934), as follows:

"* * * * *

"(2) One who has dispossessed another of a chattel under the conditions stated in § 222 is relieved from liability to the possessor if the person, who as against the possessor, was at the time entitled to the immediate possession of the chattel,

(a)   ratifies or adopts the actor's act, or

(b)   discharges the actor by

(i)   acceptance of the chattel, or

(ii)   a settlement or release of the actor, or

(iii)   the satisfaction of a judgment obtained against the actor."

Comment a to that section explains:

"If at the time that the defendant acts he has been authorized so to act by the person who, as against the possessor, was entitled to the immediate possession of the chattel, the actor may plead such person's privilege (see § 272) as a defense. This rule is similar to the rule stated in § 232 as to dis-

position by a bailee to or pursuant to authority from a third person who, as against the bailor, has a paramount right to the possession of the chattel."[1]

Thus, in order to determine whether this defense was available to defendants in this case and whether the challenged instruction was proper it is necessary to determine what rights Joyce Remington, plaintiff's estranged wife, had in the items of personal property which she claims to have owned jointly with plaintiff Edgar Remington.

■ First, the nature of the claimed "joint ownership" must be determined. It is clear that under Oregon law husbands and wives do not own personal property as tenants by the entirety. *Panushka v. Panushka,* 221 Or 145, 152-53, 349 P2d 450 (1960), and cases cited. Further, in Oregon they ordinarily do not hold such property as joint tenants, at least in the absence of express agreement. *Stout v. Van Zante,* 109 Or 430, 440-43, 219 P 804, 220 P 414 (1923).

Instead, it has been held by this court that the joint ownership of a husband and wife in personal property is ordinarily by tenancy in common. *Panushka v. Panushka, supra* at 157. See also *Smith v. Durkee,* 121 Or 86, 91, 254 P 207 (1927), and *Ganoe v. Ohmart,* 121 Or 116, 125, 254 P 203 (1927).

■ Despite the fact, however, that a wife may be an owner in common of personal property acquired during marriage, it does not follow that a wife who removes such items of personal property from the family home and asserts a right of exclusive possession in herself over such property may not be liable to her

---

[1] Restatement of Torts § 272, referred to in the above comment, reads:

"One who is entitled to the immediate possession of a chattel is not liable to another for dispossessing him of it."

husband in an action for conversion. The rule applicable to actions between tenants in common for conversion of personal property is stated in *Rosenau v. Syring,* 25 Or 386, 35 P 844 at 845 (1894) (at 389), as follows:

> "* * * The general rule is that one tenant in common of chattels cannot maintain an action of trover against his cotenant, because the right of possession lies at the foundation of the action, and the one is as much entitled to the possession as the other. But where one tenant in common, denying the right and title of his cotenant, and claiming the exclusive ownership in himself, applies the joint property to his own exclusive use, it will amount to a conversion, and enable his cotenant to support trover against him therefor (citing cases)."

Cf. *Roger Dean Chevrolet, Inc. v. Fischer,* 217 So 2d 355 (Fla App 1969); *Quinn v. Forsyth,* 116 Ga App 611, 158 SE2d 686 (1967); *Feltz v. Pavlik,* 257 SW2d 214 (Mo App 1953); *Sullivan v. Sherry,* 111 Wis 476, 87 NW 471 (1901).

To the same effect, although not involving similar facts, see also *Nusshold v. Kruschke,* 176 Or 697, 159 P2d 819 (1945).

It follows that defendants' partial affirmative defense, although applicable to any items of personal property of which Joyce Remington was the sole owner, did not provide a defense with reference to items of personal property owned by her and her husband as tenants in common.

It also follows that the instruction as given by the trial court to the effect that defendants would not be guilty of conversion of any items of personal property as to which she had a "joint right with the plaintiff, her husband, of * * * immediate possession" was an incorrect instruction. Because the jury could have

found that many of the items of personal property taken by defendants were owned jointly by plaintiff and his former wife, the giving of that instruction was prejudicial error requiring a new trial.

Because a new trial will be required, however, we should also note two other contentions by defendants relating to questions raised by the giving of this instruction.

### 3. *Defendants' contention of "good faith."*

In contending that it was not error to give the foregoing instruction defendants say that "it * * * was at least a jury question under *Mustola v. Toddy,* 253 Or 658, 663-64, 456 P2d 1004, 1007 (1969), adopting the Restatement rule whether defendants committed conversion by their acts in recognition of her possession." We understand the effect of this contention by defendants to be that they cannot properly be held liable for conversion if they acted in "good faith."

Section 222A of the Restatement of Torts 2d (1965), as adopted in *Mustola* (at 663-64) as a "new definition of conversion" is as follows:

"'§ 222A. What Constitutes Conversion

"'(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

"'(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"'(a) the extent and duration of the actor's exercise of dominion or control;

"'(b) the actor's intent to assert a right

in fact inconsistent with the other's right of control;

" '(c)  *the actor's good faith;*

" '(d)  the extent and duration of the resulting interference with the other's right of control; .

" '(e)  the harm done to the chattel;

" '(f)  the inconvenience and expense caused to the other.' "  (Emphasis added)

Even under this "new definition" of conversion "good faith" is not a complete defense, but only one "factor" to be considered. Our decision in *Mustola,* however, did not involve discussion of "good faith" as a "factor" to be considered. Instead, this court noted that the "factors" listed in § 222A were "not intended to be exclusive" and then proceeded to consider an additional "factor" as "controlling" in that case.[2]

Because *Mustola* did not directly consider the question whether "good faith" is even a proper "factor" to be considered by the jury in an action for conversion, it may be that this court should, when that question is presented, consider whether (1) to confirm the test as stated in § 222A and *Mustola,* or (2) to reaffirm the more traditional view to the effect that "good faith" is not even a "factor" in an action for conversion, in

---

[2] Thus, in *Mustola v. Toddy,* 253 Or 658, 666, 456 P2d 1004 (1969), we said:

"* * * And we are informed by comment d to this section that the factors listed in subsection (2) 'are not intended to be exclusive.' There is a factor not listed in subsection (2) which, we think, is controlling in the present case. That factor is the desirability of permitting police officers acting in emergency situations to have sufficient leeway in dealing with property coming under their control as an incident to law enforcement that they are not unduly inhibited in carrying out their duties. This is a part of the larger problem of establishing the scope of the privilege or immunity for governmental officers."

accordance with the common law rule as stated by Prosser, The Law of Torts 83, § 15 (4th ed 1971), and as previously stated by this court in *Madden v. Condon National Bank,* 76 Or 363, 367-68, 149 P 80 (1915), a case apparently not called to the attention of this court at the time of its decision in *Mustola,*[9] or (3) to abolish the tort of conversion, as proposed by the special concurring opinion in this case and for the reasons stated in that opinion.

In this case, however, this question is not presented for decision. Plaintiff makes no contention on this appeal that "good faith" is not a proper "factor" to be considered by the jury in an action for conversion. This case was also tried and submitted to the jury on the theory that the rule as stated in Restatement § 222A is a correct statement of the law. Under these circumstances, we do not believe that this is a proper case in which to change the substantive law of conversion.

4. *Defendants' claim of a right of "self-help."*

Defendants say that the foregoing instruction was proper because "a wife is entitled to use self-help for

[9] For a statement of the conflict between the common law rule and the rule as stated in § 222A, Restatement of Torts 2d (1965), see *Poggi v. Scott,* 167 Cal 372, 139 P 815, 816 (1914). See also Harper and James, The Law of Torts § 2.10 (1956). For other cases adopting the common law view that "good faith" was not a "factor" in an action for conversion, see *Newhart v. Pierce,* 254 Cal App 2d 783, 62 Cal Rptr 553 (1967); *Carolina Casualty Insurance Co. v. Tisdale,* 46 Ala App 50, 237 So 2d 855 (Civ App 1970), *cert denied* 237 So 2d 861 (S Ct 1970); *Powell v. Forest Oil Corp.,* 392 SW2d 549, 552 (Tex Civ App 1965); *Pan-American Petroleum Corp. v. Long,* 340 F2d 211 (5th Cir 1964), *cert denied* 381 US 926 (1965), and *Allred v. Hinkley,* 8 Utah 2d 73, 328 P2d 726, 728 (1958).

See also Restatement of Restitution § 128, Comment k (1937), and Restatement of Torts 2d § 244 (1965), which recognizes that "mistake" by a defendant in an action for conversion does not ordinarily relieve him from liability.

her needs if she is not at fault" and that "an instruction to this effect was requested" (but not given).

It may be that a wife may have a right of self-help under some circumstances. See Paulsen, Support Rights and Duties Between Husband and Wife, 9 Vand L Rev 709 (1956); *Kaufmann v. Kaufmann,* 166 Pa Super 6, 70 A2d 481 (1950); and *Whittle v. Whittle,* 5 Cal App 696, 91 P 170 (1907).

In order for "self-help" to provide a defense in such a case, however, it may be that such a defense must be pleaded as an affirmative defense alleging facts sufficient to establish such a defense, which was not done in this case. If so, the trial court did not err either in refusing to give the requested instruction on "self-help" or in giving the foregoing instruction as one which, in effect, recognized a possible right of "self-help." That question, however, is not discussed by the parties in their briefs on appeal in this case.

■ In any event, and because this case must be remanded for a new trial, we hold that any right of "self-help" which Joyce Remington may have had was not properly exercised under the facts and circumstances of this case, including the potential for violence and for a breach of the peace resulting from the manner in which defendants gained access to the family home not only in the absence of the plaintiff and without his consent, but over the protest of his son, who was so agitated that he considered using a gun to force defendants to leave until advised by telephone by the secretary of plaintiff's lawyer to himself leave the premises. Indeed, the common law cause of action for trover had its genesis in the recognition of a need to provide a peaceable remedy for determination of the right to immediate possession of personal property and thus to eliminate the dangers resulting from possible breaches of the peace in the exercise of

self-help. See Prosser, The Law of Torts 94, § 15 (4th ed 1971). In addition, a statutory remedy is provided by ORS 108.080 for use in disputes between a husband and wife over the right to possession of personal property.

■ Accordingly, we hold that "self-help" was not a defense in this case. Again, however, these same facts and circumstances could properly be considered by the jury on the issue of punitive damages.

5. *Plaintiff's claims of error relating to other instructions.*

■ Plaintiff assigns as error the failure of the trial court to instruct the jury that there is a presumption of ownership in favor of a husband that household furniture, furnishings and fixtures belong to him, even after a husband and wife have been separated and are no longer living together.

Although such a presumption may formerly have been recognized by some courts, it is not one of the statutory presumptions included in ORS 41.350 and 41.360 and any such presumption would now be held to violate the right of a wife to equal protection of the law. See *Reed v. Reed*, 404 US 71 (1971). Cf. *Frontiero v. Richardson*, 411 US 677 (1973).[4]

■ Plaintiff also assigns as error the giving of an instruction to the effect that Oregon statutes provide a civil remedy by an action at law between spouses in the event that either should obtain possession or control of property belonging to the other. Plaintiff excepted to this instruction as abstract, confusing and prejudicial.

We agree that this instruction was abstract and

---

[4] To the extent that our holding in *Wagner v. Wagner*, 206 Or 340, 343-44, 293 P2d 224 (1956), is to the contrary, that case is overruled.

also that it may have been somewhat confusing. We do not believe, however, that it was prejudicial. Indeed, plaintiff himself could have benefited from that instruction because the jury could have believed from it that Joyce Remington, plaintiff's estranged wife, could have brought such an action against plaintiff and that when she did not do so, but instead instructed defendants to go to the house and remove the items in dispute, neither she nor the defendants acted in good faith, but instead acted willfully and maliciously, and that this was a proper "factor" to be considered by the jury on the issue of punitive damages.

■ In addition, plaintiff assigns as error the failure of the trial court to give the statutory instruction that a witness shown to be false in one part of his testimony is to be distrusted in other parts. See ORS 17.250(3). Although we believe that this was an appropriate case for the giving of such an instruction and that it should be given on the retrial of this case, we do not believe that the failure to give this instruction was prejudicial and reversible error.

6. *Plaintiff's claims of error relating to admission of evidence.*

■ Plaintiff assigns as error the admission over objection of evidence relating to an automobile which plaintiff allegedly gave to his wife as a wedding gift and then traded for another automobile which he allegedly repossessed from her after the separation, leaving her destitute and without a car.

· Defendants' only contention on this appeal is that such evidence was relevant to the issue of "fault," in support of their contention that Joyce Remington was entitled to exercise "self-help." While the admission of such evidence may not have been prejudicial, in view of the latitude allowed to both parties in the

offering of evidence on collateral issues, we agree that it was not relevant to that issue. We have previously held that any right of self-help that plaintiff's estranged wife may have had was not properly exercised by her under the facts and circumstances of this case. Indeed, at the end of the trial, the jury was instructed to disregard that evidence.

■ Finally, plaintiff assigns as error the admission of evidence to show that plaintiff had made no demands upon his former wife for return of any of the items of personal property and did not sue her to recover its value. Defendants' only contention on this appeal is that such evidence was admissible "to show abandonment by plaintiff of this property to his wife." We seriously doubt whether such evidence was relevant to that issue, particularly in view of the fact that the wife is not a party to this action. We believe, however, that there was no prejudice in the admission of that evidence.

For all of these reasons, the judgment of the trial court is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

O'CONNELL, C. J., specially concurring.

In *Mustola v. Toddy*, 253 Or 658, 456 P2d 1004 (1969), we accepted the definition of conversion found in Restatement (Second) of Torts § 222A (1965). In doing so we said, "[t]here is a strong argument for abolishing the distinction between conversion and other types of interference, such as trespass." (253 Or at 664, fn. 4.) A careful analysis of Section 222A of the Restatement (Second) of Torts will, I think, reveal that in the process of changing the definition of conversion, the drafters so modified the common law concept of a forced sale that there is no longer any dis-

tinction between the remedies under trespass to chattels and conversion. Section 222A defines conversion as follows:

"(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

"(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a) the extent and duration of the actor's exercise of dominion or control;

"(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c) the actor's good faith;

"(d) the extent and duration of the resulting interference with the other's right of control;

"(e) the harm done to the chattel;

"(f) the inconvenience and expense caused to the other."

In subsection (1) of Section 222A, it will be noted that in purporting to provide a test by which to determine whether the interference is to be classified as a conversion or a trespass to chattels, the criterion is whether the defendant "may justly be required to pay the other the full value of the chattel." This is tantamount to saying that when there is an interference with another person's chattel, the measure of damages should be fair. This, in effect, removes from the concept of conversion the forced sale remedy as it was applied under the old definition of conversion. And as observed elsewhere, once the forced sale remedy is

removed, the distinction between trespass to chattels and conversion is unnecessary.[1]

It appears, then, that by our previous adoption of Section 222A in *Mustola v. Toddy, supra,* we in effect abolished the tort of conversion. We should now expressly proclaim that fact and hereafter treat any actionable interference with a chattel as a trespass. This would make it unnecessary to discuss, as the majority opinion does, the significance of good faith in an action of conversion. Therefore, upon a retrial of the present case the jury should be instructed in accordance with the measure of damages applicable to the action of trespass to chattels.

---

[1]
"Perhaps the greatest clarification of the law regarding interference with the interest in possession of a chattel would result from the abandonment of the conversion measure of damages. It seems somewhat anachronistic to have to distinguish between two remedies for the same sort of wrong in a jurisdiction where the forms of action have been abolished, but this is really what the court is doing when it decides whether the defendant's interference with the plaintiff's chattel is a conversion or a trespass to chattel. Were it not for the forced-sale remedy, such a distinction would be unnecessary." Faust, Distinction Between Conversion and Trespass to Chattels, 37 Or L Rev 256 at 270-71 (1958).