Argued and submitted September 18, 1984, affirmed April 3, reconsideration denied July 5, petition for review allowed August 8, 1985 (299 Or 583)
See 300 Or 243 (1985)

PAYLESS DRUG STORES NORTHWEST, INC.,
*Respondent,*

*v.*

BROWN et al,
*Appellants.*

(83-1-1014; CA A30985)

698 P2d 45

Peter Fels, Oregon Legal Services Corporation, Pendleton, argued the cause for appellants. With him on the brief was Steven N. Thomas, Pendleton.

Leslie Swanson, Eugene, argued the cause for respondent. With him on the brief were Sharon A. Rudnick and Harrang, Swanson, Long & Watkinson, P. C., Eugene.

Norman J. Weiner, Mark C. McClanahan and Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief amicus curiae for Oregon Retail Council.

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem, and Philip Schradle, Assistant Attorney General, Salem, and James E. Mountain, Jr., Solicitor General, filed a brief amicus curiae for State of Oregon.

Anna M. Moran, Portland, filed a brief amicus curiae for American Civil Liberties Union of Oregon.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

Defendants appeal a judgment against them for penalties of $117.74 plus costs. ORS 30.875(2).[1] Plaintiff's security guard arrested Bobbi Brown, defendants' 15-year-old unemancipated daughter, outside plaintiff's Pendleton store for "shoplifting" five items with a total retail value of $17.74. ORS 164.045. Plaintiff demanded that defendants pay the $100 statutory minimum "civil penalty" plus $17.74, the retail value of the merchandise that Bobbi took from the store. Defendants alleged affirmatively the unconstitutionality of ORS 30.875(2) and counterclaimed for damages under the Unlawful Debt Collection Act. *See* ORS 646.639. Defendants moved for summary judgment on plaintiff's claim and on their counterclaim and later moved for a directed verdict on plaintiff's claim. The court denied those motions. The court granted plaintiff's motion for a directed verdict on defendants' counterclaim. The jury then returned a verdict for plaintiff on its claim. We affirm.

■ Defendants assert that the court erred in denying their motion for summary judgment. They argue that ORS 30.875(2), which imposes vicarious liability on the custodial parents of an unemancipated child, is unconstitutional. We will not, however, review the denial of a motion for summary judgment in an appeal from a judgment entered after trial. *Mt. Fir Lumber Company v. Temple Dist. Co.,* 70 Or App 192, 198, 688 P2d 1378 (1984).

■ Defendants also assign as error that the court denied their motion for a directed verdict. In support of the motion, defendants' counsel simply stated:

"Your Honor, we move for a directed verdict in defendants' favor on plaintiff's case * * *."

Defendants did not assert any grounds, constitutional or

---

[1] ORS 30.875(2) provides:

"The parents having custody of an unemancipated minor who takes possession of any merchandise displayed or offered for sale by any mercantile establishment, * * * without the consent of the owner, and with the intention of converting such merchandise or produce to the minor's own use without having paid the purchase price thereof, or who alters the price indicia of such merchandise, shall be civilly liable to the owner for actual damages, for a penalty to the owner in the amount of the retail value of the merchandise or produce not to exceed $250, plus an additional penalty to the owner of not less than $100 nor more than $250 * * *."

otherwise, to support the motion, *see* ORCP 60, and cannot do so now. *Remington v. Landolt,* 273 Or 297, 302, 541 P2d 472 (1975). Defendants did not otherwise present the constitutional issue to the court.

■        As a third assignment of error, defendants claim that the trial court erred in granting plaintiff's motion for a directed verdict on defendant's counterclaim. Defendants asserted that plaintiff's demand letter violated the Unlawful Debt Collection Act, ORS 646.639. Under ORS 646.639(1), however,

"(a) 'Consumer' means a natural person who purchases or acquires property, services or credit for personal, family or household purposes.

"(b) 'Consumer transaction' means a transaction between a consumer and a person who sells, leases or provides property, services or credit to consumers.

"* * * * *

"(e) 'Debt' means any obligation or alleged obligation arising out of a consumer transaction."

Whether or not Bobbi shoplifted, there was no evidence from which the jury could find that there was a "consumer transaction" between her and plaintiff. The evidence was undisputed that Bobbi unilaterally took the merchandise from the store. The trial court did not err.

■        As their fourth assignment of error, defendants claim that the trial judge erred when he told the jury before *voir dire:*

"[T]he plaintiff is asking to recover from defendant some statutory relief, by way of a penalty, for permitting their daughter to shoplift from one of their stores * * *. As I have indicated this is a case in which Payless Drug Stores is attempting to recover some statutory penalties and costs from the defendants who are parents of a youngster who was shoplifting in their store."

Defendants assert that the response of Mrs. Zielke, the first juror that defendants' questioned on *voir dire,* shows that the court's comments were prejudical:

"[Defendant's counsel]: Do you still believe that you could still make a fair determination based upon what you have heard so far?

"Verla J. Zielke: Not what I have heard so far."

Plaintiff's counsel, however, questioned Mrs. Zielke further:

"Q. Mrs. Zielke, and actually as far as the rest of the jury is concerned: Obviously, part of the evidence in this case will have to do with an incident that occurred at Payless, and as the Plaintiff's attorney, we bear a burden of proof with regard to the fact that Bobbie [sic] Brown did take items from the store without paying for them. No evidence has been presented on that yet. I don't know what evidence they will present. I do know the evidence that I will put on, because I've talked to the witnesses in advance of the trial here. But will you have any difficulty in listening to the evidence and weighing the credibility of the witnesses and deciding after you have heard the facts in this case, then, which party is entitled to a verdict in this case?

"A. No, I'll [inaudible]

"Q. Have you made up your mind now?

"A. No.

"Q. All right. Well, I think, I think counsel may have misunderstood you."

Defendants' counsel then inquired:

"Q. I inquired whether you had made up your mind whether there had in fact been shoplifting in this case.

"A. Oh. I'm sorry. I didn't understand it from that way.

"Q. Do you think there has been shoplifting in this case?

"A. I don't know, because — I don't know yet.

"Q. OK. That's fair. Ok, I misunderstood you, then. Excuse me."

The juror's answers do not show that she had already decided that Bobbi had shoplifted. The court's comments were harmless.

■ Defendants' fifth, sixth and seventh assignments of error relate to the admission, over defendants' objection on hearsay grounds, of testimony of plaintiff's security guard, Houts, about statements that Bobbi made to him immediately after the incident to the effect that she had been in the store and that she had taken items of merchandise without paying or intending to pay for them. Houts read from a report in which he had recorded those statements. The report, also over defendants' objection, was admitted in evidence. We agree

with defendants that the court erred when it admitted that testimony and the report.

We will not, however, reverse for evidentiary error unless a substantial right of a party has been affected. OEC 103. Without objection, Houts testified on direct examination:

"Q.  [By plaintiff's counsel]: All right. I want to go back again to why you were on the catwalk inside the store, Mr. Houts. When — what did you first observe Bobbi Brown doing?

"A.  [By Houts]: I observed her holding two items in her hand. She then selected a third item. She proceeded towards the back of the store. She then effected concealment of said items —

"Q.  Excuse me — what did you say?

"A.  She effected concealment of the items that she was holding. With a small amount of effort, she arranged them in her purse. She then turned towards the front of the store, selected another item, and then concealed that item in her clothing. She then proceeded to exit the store.

"Q.  All right, how did she get out the store?

"A.  She made her way by an exit through the northeast exit of the store to the sidewalk.

"Q.  Did she go past the cash register?

"A.  There's one in cosmetics that she would have passed.

"Q.  Did she go through the — whatever the regular line is where you stop and pay?

"A.  No, she did not.

"Q.  What did you do then?

"A.  As she left the store, I left the catwalk and proceeded out onto the sidewalk and approached her out on the sidewalk.

"Q.  What did you say to her?

"A.  I identified myself verbally and with my identification, and then asked her if there was an item that she had not paid for from Payless.

"Q.  What did she say?

"* * * * *

"A.  At that time she made no comment. I then identified the item and its location, and she did surrender the item. She then returned to the store.

"Q. All right. Do you recall what item that was that you identified and where it was located?

"A. I believe that it was a headband, in her pocket."

From this testimony the jury's conclusion was inescapable that Bobbi intended to and did shoplift, because she took merchandise from the store, concealed it in her clothing and left the store without paying for it. Admission of the report and Houts' testimony regarding Bobbi's statements, therefore, was harmless.

Defendants filed two motions before trial to exclude plaintiff's evidence of overall expenses to prevent shoplifting, overall costs that resulted from shoplifting and actual damages from Bobbi's acts. The court denied both motions. At trial the court overruled defendants' objection to plaintiff's testimony of its average cost per shoplifting incident. Defendants assign those rulings as errors, asserting that the evidence was irrelevant and prejudicial. Plaintiff responded that evidence of its overall and average costs was relevant to show that the statute has a rational relationship to a legitimate governmental purpose.

■■ Evidence of plaintiff's actual damages from Bobbi's acts is clearly relevant under ORS 30.875(2). Moreover, we conclude, for reasons unrelated to those plaintiff urges, that there was otherwise no reversible error. The jury was instructed, without objection from defendants:

"We instruct you that the law of the state of Oregon provides that the parents having the custody of an unemancipated minor, one who is still in the home, who takes possession of any merchandise displayed or offered for sale by any mercantile establishment, without the consent of the owner, and with the intention of converting such merchandise or produce * * * merchandise to the minor's own use without having paid the purchase price thereof shall be civilly liable to the owner for actual damages, for a penalty to the owner in the amount of the retail value of the merchandise or produce not to exceed $250, plus an additional penalty to the owner of not less than $100 nor more than $250."

Because of the instruction, the jury knew that it could not assess penalties unless it found that Bobbi had taken merchandise without intending to pay for it and also knew that the statutory amount of the penalty was the retail value of the

merchandise plus an additional penalty of not less than $100 or more than $250. The jury returned a verdict for the $117.74 that plaintiff had demanded, consisting of the $17.74 retail value of the merchandise plus the minimum additional penalty of $100. If there was any error, it was cured by the instruction and was harmless.

Affirmed.