Argued June 11, affirmed as modified September 8, 1965

# BECKER *v.* PEARSON ET UX

405 P. 2d 534

*Richard C. Bemis,* Portland, argued the cause for appellants. With him on the briefs were Seitz & Whipple, Portland.

*Arthur S. Vosburg,* Portland, argued the cause for respondent and cross-appellant. On the brief were Vosburg, Joss, Hedlund & Bosch and Norman L. Lindstedt, Portland.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

DENECKE, J.

The plaintiff recovered a verdict for wrongful eviction against the defendant Joseph Pearson and was awarded $96 compensatory damages and $4,000 punitive damages. He recovered another verdict for conversion for which he was awarded $290 compensatory damages and $10,000 punitive damages. The defendant appeals from the conversion judgment and the plaintiff appeals from the order of the trial court setting aside the verdict awarding damages for wrongful eviction.

The defendant contends the trial court erred in denying his motion, made at the close of plaintiff's

case, to strike the claim for punitive damages upon the ground that there was no evidence to support such claim.

The evidence most favorable to the plaintiff is as follows: The defendant owns a restaurant building. In 1952 defendant leased the building for a term of 27 months pursuant to a written lease. The written lease included a list of personal property labeled "inventory." This contained such things as china, silverware, chairs, cooking utensils, range, refrigerator, etc. The lease provided that these were to be returned to the lessor at the termination of the lease and that the lessee agreed to repair or replace those items lost or broken, reasonable wear and tear excepted.

About four months after the lease was entered into the defendant consented to plaintiff's father and stepmother taking over the lessee's rights and obligations. Plaintiff's father continued to operate the restaurant until his death in 1960. Plaintiff operated the restaurant after his father's death, first, as administrator, and then, as successor. Plaintiff in 1962 purchased from his father's estate whatever interest and property his father had at the resaturant. No written lease was ever entered into by plaintiff or his father. The parties apparently agreed that plaintiff held as a month-to-month tenant. Plaintiff's father paid $100 per month rent. When plaintiff took over the rent was raised to $125.

In April of 1963, and perhaps before, defendant was asking plaintiff "to get the inventory straightened out." We interpret this to mean to reach some agreement as to what personal property belonged to each party. Defendant never showed plaintiff the inventory list attached to the 1952 lease until April of 1963. Plaintiff did return to defendant certain items on the

inventory list. On several occasions after April 1963 defendant wrote plaintiff that "if something is not done he would terminate." It is not known whether this referred to an agreement about the personal property or something else.

On September 4, 1963, defendant served a letter upon plaintiff demanding that he vacate within 30 days and restore all of the items on the inventory list. After this demand, the parties negotiated for the sale of the premises but made no agreement.

On the afternoon of October 1, 1963, before the expiration of the 30-day period specified in the eviction notice, it appeared plaintiff was removing personal property from the restaurant and having it trucked away. Mrs. Pearson called her husband, the defendant. According to plaintiff, Pearson came in, looked around for five or ten minutes and asked plaintiff what he was going to do and plaintiff said he was going to leave. Defendant asked what he was going to do with the equipment and plaintiff said, "I'm going to take my equipment with me." Defendant told plaintiff, "You better have some lawyers ready." The conversation about the equipment was repeated and defendant told plaintiff, "Lock it up." Plaintiff did not lock it up so defendant padlocked the rear service entrance and at the front entrance, "put his lock over the hasp."

When defendant closed the front entrance, there were customers and plaintiff's employees in the restaurant. One customer was carrying out china for the plaintiff and Pearson would not let him out until he left the china in the restaurant. Someone called the police and the officer told defendant he would have to let the customers out. Defendant agreed, but said he would let no one out carrying any restaurant equipment.

The plaintiff left and returned with his attorney. The attorney asked the defendant to remove the lock as plaintiff had perishables and other items which belonged to the restaurant. According to the attorney, the defendant answered, "What's mine is mine." The defendant indicated to the attorney that his concern was the personal property upon the premises which defendant believed was his; however, he indicated no willingness to discuss any settlement.

The last person out of the restaurant on the afternoon of October first was plaintiff's employee who padlocked the front door as she left. Defendant then placed his lock upon the front door. Defendant prepared signs and placed them at the front and rear entrances. The signs read: "People having any personal effects or other legal reasons for entering this premises may do so at reasonable times. Anything except removing merchandise covered by inventory. [Signed] J. Pearson."

The premises remained locked and on October ninth plaintiff filed his complaint in this action.

Many of the items claimed by both parties are identified by the defendant in his inventory attached to the lease and by the plaintiff in his complaint by an identical description, e.g., knives, forks, spoons, plates, chairs, pots, etc. Plaintiff testified that it was impossible to distinguish some items claimed by him from items listed on defendant's inventory. He also testified that some of the items purchased by him were replacements for items on hand when he took over the restaurant.

"To justify punitive damages, the jury must be satisfied that the injury was done maliciously or willfully and wantonly or committed with bad motive or recklessly so as to imply a disregard of social obliga-

tions." *Fisher v. Carlin,* 219 Or 159, 162, 346 P2d 641 (1959).

■ We hold there was no evidence to support a verdict for punitive damages. There was a dispute about the ownership of the restaurant equipment. Some of the movable items were the property of defendant. The jury found that some of the equipment was owned by plaintiff and that defendant was a converter by preventing plaintiff from exercising his rights of ownership. This alone, however, does not permit an award of punitive damages.

In addition to the fact and manner of the conversion, plaintiff asserts that two other facts support a finding of malice or wantonness sufficient to support an award of punitive damages. Defendant's son operated a restaurant next door to plaintiff's and the son's business was not successful; and, on September 26, 1963, defendant and his wife filed an assumed business name certificate for the "Aero Cafe," listing as the place of business for the "Aero Cafe" the address of the restaurant which plaintiff leased and operated under the name "Arrow Cafe."

■ Defendant's motive in refusing to renew plaintiff's tenancy might have been to aid his son's business. This is not evidence of malice nor was it wrongful. Acts of conversion upon plaintiff's equipment could not conceivably aid the son's business. These same observations are applicable to the filing of the assumed business name certificate.

■ "* * * [P]unitive damages are not favored in the law * * *." *Smith v. Abel,* 211 Or 571, 595, 316 P2d 793 (1957). *Perry v. Thomas,* 197 Or 374, 253 P2d 299 (1953), and *Hall v. Work,* 223 Or 347, 354 P2d 837 (1960), are conversion cases in which this court found that there was no evidence to support an

award of punitive damages. In *Perry v. Thomas,* supra, the defendant was secondarily liable upon a note secured by a mortgage on a logging truck. The note was in arrears; defendant asked plaintiff debtor-mortgagor to leave the truck with him until the payments were made current. The plaintiff refused. The plaintiff became hospitalized and defendant persuaded plaintiff's driver to park the truck on defendant's premises and leave it there. Defendant later refused plaintiff access to the truck. This court affirmed an award of damages for conversion but eliminated the punitive damages portion of the verdict.

In *Hall v. Work,* supra, the defendant made a midnight repossession of the car plaintiff was purchasing upon a conditional sales contract from defendant. Defendant claimed plaintiff had breached the contract by failing to renew the insurance. The jury found defendant had waived plaintiff's performance of this promise. However, the court affirmed the action of the trial court, but set aside the punitive damages.

The remaining 18 assignments of error are irrelevant after punitive damages are sticken, are without merit, or are not prejudicial.

The plaintiff cross-appeals from the judgment for the defendant notwithstanding the verdict for plaintiff on the eviction cause of action. Plaintiff's sole ground for his cross-appeal is that the court had no authority to grant such relief because defendant had not moved for a directed verdict.[1] ORS 18.140(1) provides:

> "* * * when a motion for a directed verdict which should have been granted has been refused

---

[1] Another ground stated by the statute is that the complaint does not state a cause of action. We agree with plaintiff that it does.

and a verdict is rendered against the applicant, the court may, on motion, render a judgment notwithstanding the verdict * * *."

The only action taken by defendant which can be construed as a "motion for a directed verdict" was a requested instruction as follows: "You are instructed to enter a verdict for Defendants on Plaintiff's first cause of action."

■ We have previously held that a requested instruction which directs the jury to return a certain verdict is tantamount to a motion for a directed verdict and an assignment of the trial court's refusal to give such a requested instruction as error is proper. *Eitel v. Times, Inc.*, 221 Or 585, 588, 352 P2d 485 (1960). It correctly follows that such a requested instruction is tantamount to a motion for a directed verdict when the issue is the trial court's authority to grant a motion notwithstanding the verdict. The criterion is, was the trial court by some means asked to direct a verdict, or, stated differently, was the trial court given an opportunity to rule upon the party's contention that the jury should return a directed verdict? The requested instruction performs this function as well as the motion for a directed verdict. The trial court had the authority to grant the motion for a judgment notwithstanding if it otherwise had merit.

The trial court in granting the motion stated:

"The reason for granting the judgment notwithstanding the verdict relative to the action for loss of profits is because of the testimony of plaintiff himself in which he said he intended to operate until the food he had on hand gave out. There is no testimony as to when the food would give out or whether there was sufficient to last the remaining three days of the tenancy so he could operate

as he had in the past. This being so, there was not testimony of damages of sufficient definiteness to merit being submitted to the jury."

We agree with the trial court's view of the evidence.

Affirmed as modified.