Argued September 11, 1978, reversed and
remanded with instructions March 20, 1979

CROOKS, *Respondent,*
*v.*
PAY LESS DRUG STORES
NORTHWEST, INC., *Appellant.*
(No. 76-6677, SC 25457)

592 P2d 196

Donald J. Friedman, of Black, Kendall, Tremaine, Boothe & Higgins, Portland, argued the cause and filed the briefs for appellant.

David Jensen, of Hammons, Phillips & Jensen, Eugene, argued the cause for respondent. With him on the brief was Helen M. Rockett, Eugene.

DENECKE, C. J.

Lent, J., concurring in part; dissenting in part opinion.

## DENECKE, C. J.

The defendant appeals from a judgment entered on a verdict against it in a damage action.

The plaintiff contends the appeal should be dismissed because the defendant failed to timely file its notice of appeal. The notice was not filed within 30 days after the entry of the judgment appealed from, but it was filed within 30 days from the date of the order denying a motion by defendant captioned, "Motion for Judgment Notwithstanding the Verdict." ORS 19.026(2) provides:

> "Where any party has served and filed a motion for a new trial or a motion for judgment notwithstanding the verdict, the notice of appeal of any party shall be served and filed within 30 days from the earlier of the following dates:
>
> "(a) The date of entry of the order disposing of the motion.
> "* * * * *."

The plaintiff contends that the motion filed by defendant was not a motion for a judgment notwithstanding the verdict (nov) because it was not and could not be granted upon any of the grounds provided in ORS 18.140(1). ORS 18.140(1) provides:

> "When it appears from the pleadings that the court has no jurisdiction of the subject of the action or the person of the defendant, or that the facts stated in the pleadings of the plaintiff or defendant, as the case may be, do not constitute a cause of action or defense thereto, or when a motion for a directed verdict which should have been granted has been refused and a verdict is rendered against the applicant, the court may, on motion, render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment, as the case may require."

The motion filed by defendant states the ground: "The trial court erred in denying defendant's Motion to Strike punitive damages allegations from plaintiff's Complaint and in instructing the jury on punitive

[483]

damages." Defendant made the motion at the end of the evidence. The plaintiff contends that it is not "a motion for a directed verdict" as that phrase is used in ORS 18.140(1). We will assume without deciding that in order for the filing of a motion for a judgment nov to extend the time for filing the notice of appeal, the motion must be upon a ground specified in ORS 18.140(1).

■ A motion for a directed verdict is not defined by statute. This court has not defined a motion for directed verdict as that phrase is used in ORS 18.140. Our decisions hold that a motion is one for a directed verdict although the motion does not request the trial court to instruct the jury that it must find on all issues either for or against a party; that is, our decisions recognize that a motion for a directed verdict can encompass a directed verdict on some but not all of the issues.

> "When a cause is finally submitted, if it appears from the evidence received that one of the parties is entitled, as a matter of law, to a particular finding of fact, it is incumbent upon the court when so requested to direct a verdict to that effect: * * *." *Treadgold v. Willard,* 81 Or 658, 669, 160 P 803 (1916).

*Sleep v. Morrill,* 199 Or 128, 260 P2d 487 (1953), was an action for trespass. Plaintiff moved for a directed verdict on liability, leaving the issue of damages to the jury. Quoting *Treadgold,* as above quoted, the court stated:

> "Under defendant's own admissions and the undisputed evidence in the case, plaintiff was entitled to a verdict in her favor. The only question in dispute was the amount of the damage. The motion made by the plaintiff upon completion of the testimony was a clear request to the court for a peremptory instruction to that effect. Such an instruction should have been given." 199 Or at 131.

We have approved the use of a motion for a directed verdict when the motion was directed to a counter-

claim, leaving the issues framed by the complaint and answer to the jury. *McCargar v. Wiley*, 112 Or 215, 222, 229 P 665 (1924); *Western Feed Co. v. Heidloff*, 230 Or 324, 331, 370 P2d 612 (1962).

We also have approved the use of a motion for a directed verdict when the moving party moved against only one of several causes of action. *Becker v. Pearson*, 241 Or 215, 222, 405 P2d 534 (1965).

We have also held that a "requested instruction which directs the jury to return a certain verdict is tantamount to a motion for a directed verdict and an assignment of the trial court's refusal to give such a requested instruction as error is proper. *Eitel v. Times, Inc.*, 221 Or 585, 588, 352 P2d 485 (1960)." *Becker v. Pearson, supra* (241 Or at 222). *Remington v. Landolt*, 273 Or 297, 301, 541 P2d 472 (1975), cites cases limiting the quoted statement. *Hall v. Work*, 223 Or 347, 354 P2d 837, 366 P2d 533 (1960), involved trial procedures almost identical to those in the present case. It was an action for conversion in which plaintiff sought punitive damages.

> "* * * After both parties had rested the defendant moved the court to withdraw from the jury the issue of punitive damages. The court was of the opinion that the motion should be allowed but at the request of the plaintiff, pursuant to ORS 18.140 (2),[1] submitted the issue to the jury. * * *." 223 Or at 349.

The footnote states:

> "In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in his favor if the verdict is otherwise than as would have been directed." 223 Or at 349.

The jury returned a verdict for general and punitive damages. "Thereafter the court, on motion of the defendant, entered a judgment notwithstanding the verdict which set aside the judgment for punitive damages and entered judgment for plaintiff for the

general damages only." 223 Or at 349. We held that the trial court did not err in setting aside the judgment for punitive damages. We did not discuss whether the defendant's motions amounted to a motion for directed verdict and for judgment nov but treated them as such.

*Stark v. Henneman*, 250 Or 34, 440 P2d 364 (1968), was another conversion case in which plaintiff sought punitive damages. At the close of plaintiff's case, defendant moved the court to take the issue of punitive damages from the case. This was denied. "At the conclusion of all the evidence counsel for defendants submitted a motion with regard to the amount of compensatory damages proven, but nothing whatever was said about punitive damages." 250 Or at 35. After a verdict which included an award for punitive damages, the defendant filed a motion for a judgment nov, asking that punitive damages be stricken from the judgment, which was granted. We held: "The refusal of a motion for a directed verdict is a condition precedent to the exercise of the court's power to render a judgment n.o.v." 250 Or at 36. Nothing was said or needed to be said about what constitutes a motion for directed verdict as no motion of any kind was made at the close of the evidence. *Hall v. Work, supra* (223 Or 347), was not cited.

■ With this state of the law we conclude that for the purposes of ORS 19.026(2) extending the time for filing the notice of appeal, the defendant's motion and requested instruction on punitive damages are sufficient to support a motion for a judgment nov. We have not found any expression of the reason for ORS 19.026(2); however, it seems obvious; that is, there is no purpose to be served by requiring the filing of a notice of appeal when there is pending a motion which, if granted, would obviate the necessity of appeal. In the present case, after the verdict, the only issue contested by defendant was the award of punitive damages. If the trial court had granted the motion, the defendant would not have appealed.

[486]

Plaintiff brought this action under the Unlawful Trade Practices Act. ORS 646.605-646.652. The basis of the action was defendant's advertisement for the sale of a razor and the purchase of a razor by plaintiff. The jury awarded plaintiff $200 statutory damages, $6,000 punitive damages, and attorney fees. The only substantive issue on appeal is whether the plaintiff was entitled to punitive damages.

The facts on this issue, stated in the light most favorable to plaintiff because plaintiff received a verdict for punitive damages, are: Defendant prepared an eight-page color advertising supplement to be inserted in various newspapers throughout the Northwest. One item offered for sale was a razor, which the advertisement described as having a list price of $1.29 and a sale price of $0.89. In fact, the item which defendant intended to advertise was cartridges for the razor. The razor itself was normally sold for $3.29.

After the circular had been printed and distributed, the error was detected by employes of defendant. Rather than reprinting the circular, which would have cost in excess of $50,000, defendant caused an additional advertisement to be placed in the newspapers which would carry the supplement. This additional advertisement appeared in plaintiff's local newspaper, but was not seen by him. It was printed in a different part of the paper from the supplement, appeared in small print, contained no picture of the merchandise, and was printed in black and white. In contrast, the advertising supplement was printed in color, included a picture of the razor, and had much larger print. Defendant also posted notices of the error at its checkout stands.

Plaintiff, in response to the advertising circular, went to defendant's store to purchase the razor. When he arrived at the checkout stand to make his purchase he was informed of the error. He then spoke with defendant's floor supervisor who refused to sell the razor at the advertised price of $0.89, but did offer to

make the sale for $0.40 less than the normal price of $3.29. Plaintiff purchased the razor for $2.89 and left the store.

Defendant contends there is no evidence to justify the submission of the issue of punitive damages to the jury. Plaintiff answers: (1) that if the common-law standard for punitive damages must be met, there is evidence to satisfy the common-law standard; and (2) that the jury is entitled to award punitive damages whenever the jury finds a violation of the Unlawful Trade Practices Act and no evidence of any aggravating conduct is necessary.

*Noe v. Kaiser Foundation Hospital,* 248 Or 420, 425, 435 P2d 306 (1967), states when punitive damages may be awarded at common law:

> "Punitive damages can only be justified on the theory of determent. See Hodel, *The Doctrine of Exemplary Damages in Oregon,* 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard * * * [of the rights of the victim]."

■ The evidence in this case does not meet this standard. The jury could have found that the defendant knew it had printed an incorrect advertisement; it did not withdraw such advertisement because of the disproportionate cost of doing so; it took measures to inform the buying public of the mistake but these measures were not adequate to inform all of the buying public; and plaintiff was not informed of the error until he attempted to buy the razor.

A comparison of the facts of this case and *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 236-239,

242-245, 578 P2d 1225 (1978), evidences why the facts in the present case are insufficient to support an award of punitive damages. In *Chamberlain,* the defendant sold plaintiff a used car knowing it did not have in its possession an assigned certificate of title or bill of sale from the registered owner. That is a violation of ORS 481.310. There was evidence that the defendant did not believe it would have any problem in eventually securing such a title or bill of sale but it was mistaken in that belief. Plaintiff alleged defendant represented it owned said automobile and had in its possession an assigned certificate of title. We concluded the jury could have found the defendant impliedly represented to plaintiff that defendant owned the car. But we held that this was not sufficient to support a claim for punitive damages because "defendant's misconduct was not 'sufficiently arbitrary and unconscionable to constitute a grievous violation of societal interests.' " 282 Or at 238.

■ With regard to plaintiff's second contention, ORS 646.638 provides that anyone who suffers a loss as a result of "wilful use" of a practice declared unlawful by the Act may bring an action for "actual damages or $200.00, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide such equitable relief as it deems necessary."

ORS 646.605(9) provides:

"A willful violation occurs when the person committing the violation knew or should have known that his conduct was a violation."

We will assume, without deciding, that the definition of a wilful violation is applicable to a "wilful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608," as used in ORS 646.638.

The legislative history is of no assistance in solving the issue. Plaintiff contends *Wolverton v. Stanwood,* 278 Or 709, 565 P2d 755 (1977), and *Byers v. Santiam*

*Ford, Inc.*, 281 Or 411, 574 P2d 1122 (1978), hold that punitive damages are recoverable whenever any violation of the act is proved. We conclude those decisions do not answer the question. *Harrell v. Travelers Indemnity Company*, 279 Or 199, 211, 567 P2d 1013 (1977), has language that can be interpreted to support plaintiff; however, the issue was not presented or decided in that case.

The defendant asserts that *Allen v. Morgan Drive Away*, 273 Or 614, 542 P2d 896 (1975), an action brought pursuant to the Unlawful Trade Practices Act, held contrary to plaintiff's contention. We did write in *Allen*:

"* * * The evidence reveals a deliberate and calculated effort to misrepresent the facts with respect to the availability of the routes over which plaintiff's mobile home could be transported. This is the kind of conduct which should be deterred. The imposition of punitive damages will help to deter it." 273 Or at 616.

This statement seems to assume that more than a violation of the Act is necessary to enable the jury to award punitive damages. But that was not an issue in the case and we do not consider the *Allen* case dispositive.

However, we now interpret ORS 646.638 to provide that a violation by the defendant entitles the plaintiff to recover compensatory damages or $200, whichever is greater; the jury can also award punitive damages if it finds deterrence is called for and the defendant's conduct is particularly aggravated. The legislature used the common-law term, "punitive damages," and we find that it intended that such damages be awardable only when the common-law requirements for punitive damages are met. If that were not intended, "punitive" and "damages" are surplusage. If its intention was to allow the jury to award a sum in addition to compensatory damages, it could have made its intention clearly known by stating that the plaintiff was entitled to recover "actual damages or $200.00,

[490]

whichever is greater *and any other sum the jury deems proper."*

The plaintiff suggested that the term "punitive damages" was used because the legislature intended them as a punishment to deter violations. We agree. But if this common-law purpose is to be read into the term, we believe the legislature also intended the other requirement for punitive damages, the necessity of particularly aggravated conduct, to also be applicable.

Reversed and remanded with instructions to enter judgment without the award for punitive damages.

**LENT, J.,** concurring in part; dissenting in part.

I concur with the majority in the disposition of the issue of timeliness of the appeal. Were I writing on a clean slate, however, I would hold otherwise. Absent the gloss of prior decisions of this court, the statute as written would preclude an extension of time for appeal in the manner accomplished in this case. I do not mean to say that I disagree with the majority that it is better to give the trial court an opportunity to make a ruling which may obviate the necessity of an appeal; however, that is not the statutory scheme provided in so many words.

I disagree with the majority in its holding that the judgment for punitive damages must be reversed.

The true issue is whether the Unlawful Trade Practices Act permits the trier of fact, in its sole discretion, to award punitive damages against one who violates the Act, regardless of whether a common law case for punitive damages has been established.

Plaintiff actually does make two contentions: (1) that there is sufficient evidence to satisfy the common law standard for awarding punitive damages; and (2) the Unlawful Trade Practices Act permits an award of punitive damages for a violation of the Act regardless of the common law.

[491]

The majority compares the evidence in this case with that in *Chamberlain v. Jim Fisher Motors, Inc.*, 282 Or 229, 578 P2d 1225 (1978) to dispose of the first contention. For that I cannot fault the opinion. On the other hand it should be noted that *Chamberlain* cannot be dispositive of the second contention, for that case was not decided under the Unlawful Trade Practices Act.

> "We recognize that plaintiff's complaint was based upon both ORS 481.310 et seq * * * and ORS 646.605 et seq * * *. As previously held, however, we have affirmed plaintiff's right to recovery under ORS 481.310, rather than under ORS 646.605." 282 Or at 240, 578 P2d at 1230.

I believe it to be unfortunate that the second contention (and the true issue in this case) is to be decided upon the record here. Had I been the trier of fact in this case, I would not have allowed punitive damages, and I find it difficult to understand why the jury made the award. I believe the majority has been influenced to some extent by the same puzzlement. "Hard cases make bad law."

The Act provides that a person injured as a result of "wilful use or employment" of a prohibited practice may

> "recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages * * *." ORS 646.638(1).

One wilfully violates the Act when he knows or should know that his conduct is a violation of the Act. ORS 646.605(9).

No one has advanced the argument that the legislature could not constitutionally provide for the recovery of punitive damages for injurious conduct which amounts actually to mere ordinary negligence. When ORS 646.638(1) and 646.605(9) are read together, it is apparent that liability under the Act may be predicated upon ordinary negligence, for one may be liable if he "should have known" that his conduct was a

[492]

violation. The Act amounts to a declaration that even merely negligent conduct prohibited by the Act is considered by the legislature to be so anti-societal as to call for punitive damages to be assessed against the violator wherever the *trier of fact*, not the trier of law, considers that to be proper.

The majority disregards what must be considered to be that deliberate policy decision by the legislature by saying that the choice of the term "punitive damages" carries with it all its common law trappings of separation of the function of trier of law from that of trier of fact. The majority reasons that punitive damages are recoverable at common law only where there has been a particularly aggravated disregard of the rights of the victim, and the same test must be used to allow punitive damages for violation of the Act. The answer is that the legislature has found (whether or not the court would) that *violation* of the Act *is particularly aggravated disregard* of the rights of the victim as a member of the consuming public and that conduct prohibited by the Act is the kind that sanctions would tend to prevent. Compare the quotation by the majority from *Noe v. Kaiser Foundation Hospital*, 248 Or 420, 425, 435 P2d 306 (1967).