Argued and submitted October 8, affirmed in part; reversed
in part December 31, 1979, reconsideration denied February 6,
petition for review denied March 11, 1980 (288 Or 667)

# TRI-WEST CONSTRUCTION CO.,
## *Appellant,*
### *v.*
# HERNANDEZ, et ux,
## *Respondents.*

# (No. 5985, CA 13456)
#### 607 P2d 1375

Jeffrey M. Batchelor, Portland, argued the cause for appellant. With him on the briefs was Gearin, Landis & Aebi, Portland.

[962-a]

Gary R. Luisi, Hermiston, argued the cause and filed the brief for respondents.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

Plaintiff, a contractor, brought this action for breach of contract and for the value of goods and services provided in connection with home improvements at defendants' residence. By their first affirmative defense, defendants sought to avoid liability on the grounds that plaintiff had not particularized in the contract the cash price of the goods and services to be provided, as required by ORS 83.030(1). By their third and fourth affirmative defenses, defendants alleged that plaintiff violated 15 USC § 1635, a provision of the federal Truth in Lending Act (15 USC § 1601 *et seq*), by not providing defendants with that section's required notice of and opportunity to exercise their right to rescind the contract within three business days after its consummation. Defendants also advanced two counterclaims, alleging respectively: that plaintiff had "made false and misleading representations" with respect to defendants' right to rescind; and that plaintiff falsely represented that it was a licensed general contractor, thereby violating the Oregon Unlawful Trade Practices Act (ORS 646.605 *et seq*).

The trial court found in favor of defendants on those affirmative defenses and counterclaims. The court denied relief to plaintiff and gave defendants both general and punitive damages on their counterclaims. Plaintiff appeals.

On January 30, 1976, plaintiff's president and another representative visited the defendants at their home and suggested certain home improvements. Defendants expressed disinterest but agreed that they would discuss the matter with the representatives of plaintiff again the following morning. Very early the next morning, the representatives returned to defendants' home, and defendants ultimately signed a contract for home improvements. According to the defendants, they did so "to get rid of" the representatives. The contract contained a general description of the

contemplated improvements, but it did not itemize all goods and services or the prices for them. The contract contained a notice to defendants that they had a right to cancel it until midnight of the third succeeding business day by giving plaintiff written notice of their intent to cancel.

On February 2 or February 3, 1976, less than three business days after the contract was signed, defendants telephoned plaintiff's office. When they informed the person who answered that they wanted to rescind the contract, they were told that it was too late for rescission because materials had already been ordered and were in the course of delivery. Defendants later, but more than three days after the contract had been signed, gave a written notice to plaintiff stating that defendants wished to cancel the contract.

Plaintiff concedes that the January 31, 1976, contract was rescinded pursuant to applicable provisions of and regulations under the Truth in Lending Act. Nevertheless, after receiving the oral and written notices of defendants' desire to rescind, plaintiff's president appeared at defendants' home early in February. Following a "heated argument" in which defendants reiterated that they did not want plaintiff to carry out the contract, plaintiff's president stated that plaintiff was going to perform the work anyway. Thereafter, according to defendants, they believed they "had no right at all to cancel or have the work stopped." The work was begun. Defendants subsequently requested plaintiff to undertake improvements in addition to those described in the January 31 contract.

On March 3, 1976, after the work was completed, plaintiff presented defendants with a second "contract" containing a general description of the work performed. Although that instrument was in fact signed by the parties on March 3, it was dated January 15, 1976. On March 3, plaintiff also presented defendants with various other documents, including the required

notices of defendants' right to rescind under the Truth in Lending Act. Those documents were accurately dated.

Defendants did not give plaintiff any notice of rescission after the March 3 contract document was signed. That document encompassed the work earlier described in the cancelled January 31 contract, as well as the additional work defendants requested plaintiff to perform after rescinding the original contract and after plaintiff had begun the original work. Defendants have not paid plaintiff for any goods or services provided by plaintiff.

## DEFENDANTS' FEDERAL TRUTH IN LENDING ACT DEFENSES

As relevant, 15 USC § 1635 provides:

"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

"(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest

arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."

The issues the parties raise are (1) whether plaintiff failed to comply with section 1635(a) in connection with what the parties refer to as the March 3 contract, and (2), if so, whether defendants are entitled to avoid all obligations under that contract. Plaintiff contends that there was no violation of section 1635 in connection with the March 3 contract and that that contract was not rescinded by defendants. Defendants argue that plaintiff violated section 1635 in numerous ways in connection with the January 31 contract and that those violations "infect" the March 3 contract as well.

Before considering the parties' arguments, we must determine what relationships, contractual or otherwise, express or implied, existed between the parties at the various relevant times. The parties now agree that the January 31 contract was rescinded and never had legal effect. However, at the time plaintiff commenced work in February, neither party was operating on the assumption that the January contract had been rescinded. At least ostensibly, plaintiff was performing pursuant to that contract, as modified by the oral

requests by defendants for additional work, and defendants believed that plaintiff was entitled to perform under the January contract as so modified. Hence, the operating assumptions of both parties in February were that their duties and obligations were defined, at least in part, by what they now agree was a legal nullity.

The March 3 contract also cannot be the source of any legal relationship between the parties. What the parties refer to as the March 3 contract in fact only memorialized the already completed work and purported to provide defendants with the statutorily required opportunity to rescind a contract which plaintiff had already fully performed. The most accurate statement of the relationship between the parties was that they entered into an oral contract in February, consisting in part of the duties and obligations agreed to under the rescinded January 31 contract and in part of the duties and obligations they orally specified after plaintiff refused to honor defendants' rescission of the January 31 contract and began the work. However, plaintiff did not provide defendants with the required notices of the latters' right to rescind under section 1635 before plaintiff commenced work under the oral understanding reached in February.

Plaintiff also violated 12 CFR § 226.9(c), which provides in relevant part:

"*** [T]he creditor in any transaction subject to this section *** shall not perform, or cause or permit the performance of, any of the following actions until after the [three-day] rescission period has expired and he has reasonably satisfied himself that the customer has not exercised his right of rescission:

"(1) Disburse any money other than in escrow,

"(2) Make any physical changes in the property of the customer;

"(3) Perform any work or service for the customer; or

"(4) Make any deliveries to the residence of the customer if the creditor has retained or will acquire a

security interest other than one arising by operation of law."

We reject plaintiff's contention that it complied with section 1635 in connection with what the parties designate as the March 3 contract. At no time was there an agreement between the parties by which defendants were given the required opportunity to rescind *and* did not rescind.

Defendants contend that, in view of plaintiff's violations of section 1635 and applicable regulations, defendants have no obligation to tender any property to plaintiff or to pay the reasonable value of the property and services provided. Section 1635(b) provides that, if the creditor has delivered property to the obligor, the obligor must tender the property or its reasonable value to the creditor upon the latter's performance of its obligations under section 1635 *(e.g.,* returning earnest money and terminating security interests). The creditor has 10 days after the tender to take possession of the property or its value before ownership of the property vests in the obligor "without obligation on his part to pay for it."

Defendants made no tender of the property or its reasonable value. They argue, however, that plaintiff did not perform the acts which section 1635(b) requires of creditors after the rescission of the January 31 contract and that, therefore, no tender by defendants was necessary for them to obtain ownership of the property. In *Gerasta v. Hibernia Nat. Bank,* 575 F2d 580 (5th Cir 1978), an argument identical to these defendants' was rejected. The court held that obligors are not excused from the tender requirement of section 1635(b) by reason of a creditor's failure to perform its post-rescission obligations under that subsection and that the remedy of the obligor for such a failure by the creditor is provided by 15 USC § 1640.[1]

---

[1] 15 USC § 1640 provides, as material:

"(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D

We hold that the defendants are required to tender to plaintiff the original items of personal property provided by plaintiff in connection with the home improvements, or to tender the reasonable value of that property, but not including the services furnished. On remand, the trial court is instructed to determine whether defendants elect to tender the property or its value, and, if they elect to tender the value, the court is to ascertain that value.

## DEFENDANTS' STATE LAW DEFENSE

ORS 83.030(1) provides, as pertinent:

"The retail instalment contract shall contain *** a description or identification of the goods sold or to be sold, or services furnished or rendered or to be furnished or rendered. The contract also shall contain the following items ***

"(1) The cash sale price of each item of goods or services;"[2]

## ORS 83.170 provides:

"Any seller who enters into any contract or agreement which does not comply with the provisions of ORS 83.010 to 83.190 or who violates any provision of ORS 83.010 to 83.190 except as a result of an accidental or bona fide error shall be barred from the recovery of any service charge, official fees or any delinquency or collection charge under or in connection

or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

"(1) Any actual damage sustained by such person as a result of the failure;

"(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000 ***."

[2] Retail installment contracts subject to ORS 83.010 to 83.190 include those entailing services for "repairs, alterations or improvements upon or in connection with real property." ORS 83.010(12).

with the related retail instalment contract or purchases under a retail charge agreement; but the seller may nevertheless recover from the buyer an amount equal to the cash price of the goods or services and the cost to the seller of any insurance included in the transaction."

Plaintiff concedes that none of the contractual documents contained the itemized prices for goods and services required by ORS 83.030(1). Plaintiff argues, however, that literal compliance with that statute is impossible, that to construe the statute literally would render it unreasonable and absurd and that the description of services in the contracts substantially complied with ORS 83.030(1). The statute is unambiguous. Plaintiff concedes that it did not comply with the terms of the statute, and we do not agree that a literal interpretation of the statute would be sufficiently unreasonable or absurd to warrant this court to substitute its judgment for the legislature's.

Plaintiff argues that, if it did violate ORS 83.030, defendants are not entitled under ORS 83.170 to avoid all of their obligations under the contract, but are required to pay plaintiff an amount equal to the cash price of the goods and services provided by plaintiff in connection with the home improvements. Plaintiff is correct. We have held that, under 15 USC § 1635, plaintiff's recovery is limited to the property it delivered to defendants or to the reasonable value of that property. Plaintiff's rights under the state statute are not so limited. It is entitled to recover the "cash price" of both its "services" and "goods." Defendants, having prevailed on the state statute as an affirmative defense, are bound by the limitations of the defense. It does not permit them to avoid entirely a promise to pay for goods and services. The trial court, however, apparently determined that the partial affirmative defenses under the Truth in Lending Act and ORS 83.170 were complete defenses and therefore denied plaintiff any relief. That was reversible error.

[970]

## DEFENDANTS' FIRST COUNTERCLAIM

Defendants alleged in their first counterclaim that the representation by plaintiff's agent that defendants had no right to rescind the January 31 contract, and various other acts by plaintiff relating to the rescission right, were false and misleading. Defendants argue that this conduct violated ORS 646.608(1)(k), which provides:

"(1) A person engages in an unlawful practice when in the course of his business, vocation or occupation he:

"* * * * *

"(k) Makes false or misleading representations concerning *** the nature of the transaction or obligation incurred;

"* * * * *."

Plaintiff argues that the statement of its agent that defendants had no right to rescind was not a misrepresentation but was a mere statement of opinion regarding a legal relationship about which both parties had equal knowledge *(see Dorr v. Janssen,* 233 Or 505, 378 P2d 999 (1963)); and that, in any event, because defendants had actual written notice of their right to rescind, they could not justifiably rely upon any contrary representation made by plaintiff or its agent. *See Sanders v. Francis,* 277 Or 593, 561 P2d 1003 (1977).

We do not agree that a misrepresentation by the creditor as to the obligor's right to rescind is a mere difference of opinion, or that reliance by the obligor is necessary for the misrepresentation to be actionable. The Supreme Court stated in *Francis* that whether reliance is an element of an action under the Oregon Unlawful Trade Practices Act "necessarily depends on the particular unlawful practice alleged." 277 Or at 599. In this case, the unlawful practice alleged by defendants was a representation by plaintiff that defendants had no right to rescind a contract which both federal law (15 USC § 1635) and state law (ORS 83.710 *et seq)* required plaintiff to inform defendants

they did have a right to rescind. The representation was therefore not a mere statement of opinion; it was an affirmative misstatement by one party of a fact which that party was required to accurately state to the other. Similarly, proof that a party justifiably relied on a representation is not necessary when the representation involves a matter about which the party making it is legally required to inform the other. There was evidence that defendants were required to make certain out of pocket payments to third parties to protect their property interests as a result of their having not been able to prevent plaintiff from proceeding with the work. It was not error for the trial court to measure their damage by those amounts. ORS 646.638(1).

## DEFENDANTS' SECOND COUNTERCLAIM

In their second counterclaim, also based on the Oregon Unlawful Trade Practices Act, defendants alleged that plaintiff represented to them that it was a licensed general contractor, when in fact plaintiff's registration under ORS 701.055 had been revoked. Plaintiff argues that defendants cannot recover for that misrepresentation because there was no showing of damage. Defendants respond that there was evidence that the work conducted by plaintiff was negligent and improper and that they had no recourse to the bond which plaintiff necessarily would have had if its representation regarding licensure had been correct. That evidence was sufficient to support a finding that defendants suffered some damage by reason of plaintiff's misrepresentation, although not ascertainable in amount, and the evidence was therefore sufficient to support the trial court's award of $200 in general damages on the second counterclaim—the minimum amount recoverable under ORS 646.638(1). *Scott v. Western Int. Sales, Inc.,* 267 Or 512, 515, 517 P2d 661 (1973).

## PUNITIVE DAMAGES

The trial court awarded punitive damages under both of the counterclaims, as it had specific authorization for under ORS 646.638(1). In *Allen v. Morgan Drive Away,* 273 Or 614, 616, 542 P2d 896 (1975), the Supreme Court said:

> "***The evidence reveals a deliberate and calculated effort to misrepresent the facts with respect to the availability of the routes over which plaintiff's mobile home could be transported. This is the kind of conduct which should be deterred. The imposition of punitive damages will help deter it."

The evidence here is equally strong that plaintiff deliberately and calculatedly set out to overreach defendants and force upon them a transaction they wanted to avoid. Punitive damages were well warranted on the first counterclaim.

We reverse the trial court's award of punitive damages to defendants on their second counterclaim. It appears that plaintiff did not bring itself into compliance with ORS chapter 731 until March 25, 1976. Its conduct in misrepresenting its status was willful. *Scott v. Western International Surplus Sales, Inc.,* 267 Or 512, 517 P2d 661 (1973). Nonetheless the evidence does not show that the misrepresentation that plaintiff was a licensed general contractor was made with "particularly aggravated disregard" for defendants' rights, and punitive damages therefore did not lie. *Crooks v. Payless Drug Stores,* 285 Or 481, 592 P2d 196 (1979).

The judgment is reversed in part and remanded to the trial court for further proceedings:

1. To furnish defendants an election whether to tender the property furnished by plaintiff or to tender the value thereof.

2. To determine the value of the goods and services furnished by plaintiff.

3. To enter a judgment for plaintiff in accordance with 1 and 2 above.

4. To enter a judgment for defendants on their second counterclaim without an award of punitive damages.

5. To enter a judgment consistent with ORS 18.100.

In all other respects the judgment is affirmed.