Argued and submitted December 6, 1985, affirmed on appeal; cross-appeal held moot
August 6, 1986

## WENTWORTH & IRWIN, INC.,
### dba Columbia Leasing Company,
*Appellant - Cross-Respondent,*

*v.*

## UNITED STATES NATIONAL BANK OF OREGON,
*Respondent - Cross-Appellant.*

### (A8302-01282; CA A32142)

723 P2d 1016

Thomas A. Gordon, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were I. Franklin Hunsaker and Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

J. Stephen Werts, Portland, argued the cause for respondent - cross-appellant. On the briefs were J.P. Graff and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This action to replevy 23 automobiles involves a priority dispute between two creditors of Heinrich Motors (Heinrich), an automobile dealership. The trial court entered judgment for defendant, notwithstanding the jury verdict for plaintiff. Plaintiff appeals, and defendant cross-appeals. We affirm on the appeal, and the cross-appeal thereby becomes moot.[1]

Plaintiff is in the business of leasing new cars and trucks. In September and October, 1981, it "purchased" and contemporaneously leased back to Heinrich 25 new Datsun automobiles.[2] Plaintiff contends that it thereby acquired a lessor's interest in the vehicles. Defendant, which provided Heinrich's floor-plan inventory financing, contends that the sale-leaseback agreements between plaintiff and Heinrich were not true sales and leases, but were disguised loans secured by the 25 vehicles; therefore, it argues, plaintiff has only a security interest, subject to the secured transaction provisions of the Oregon UCC. ORS 79.1010 to 79.5070. It argues that, under the UCC, its interest in the vehicles, acquired pursuant to its floor-planning agreement with Heinrich, is superior to that of plaintiff. Plaintiff contends that, even if it is only a secured party, its interest is superior to that of defendant.

This dispute arose because Heinrich failed to notify defendant of the sale-leaseback transactions and failed to remit to defendant the amounts payable under the security agreement following the "sale." When defendant learned of the transactions over a year later, it seized the 23 vehicles remaining in Heinrich's possession, which it then sold. Plaintiff commenced this action, claiming priority to the proceeds of that sale.

The trial court ruled that, as a matter law, the disputed transactions were, in truth, loans secured by the 25 new cars and trucks. It then submitted three issues to the jury.

---

[1] Defendant's cross-appeal is conditioned on reversal. Because we affirm on the appeal, it is unnecessary to reach the cross-appeal.

[2] There were two separate transactions. The first occurred on September 15 and covered 15 vehicles. The second occurred on October 5 and covered 10. The cumulative price of all 25 vehicles was $197,500, or $7,900 per vehicle.

The jury found in a special verdict: (1) plaintiff was a buyer in the ordinary course of business; (2) even if it was not, defendant authorized the transactions; and (3) Heinrich did not continuously hold the vehicles as inventory for sale after the transactions took place. Notwithstanding that verdict, the trial court entered judgment for defendant. On appeal, plaintiff assigns as error the trial court's conclusion that it had a security interest only and that that interest was inferior to that of defendant, contending that there were issues of fact that were properly submitted to the jury and that the jury verdict should stand.

Whether a lease is a "true" lease or one intended for security and therefore controlled by the UCC depends on the intent of the parties as determined by the facts of each case. ORS 79.1020(1)(a); *All-States Leasing v. Ochs,* 42 Or App 319, 600 P2d 899 (1979). If the written agreement is unambiguous, the determination is for the court. In *All-States Leasing,* we identified several factors that are relevant to that determination. They include, but are not limited to: (1) whether the lessee is given an option to purchase the property and, if so, whether the option price is nominal, *see Peco, Inc. v. Hartbauer Tool & Die Co.,* 262 Or 573, 500 P2d 708 (1972); (2) whether the lessee acquired any equity in the property; (3) whether the lessee is required to bear the entire risk of loss; (4) whether the lessee is required to pay all charges and taxes imposed on ownership; (5) whether there is a provision for acceleration of rent payments; and (6) whether the property was purchased specifically for lease to the lessee. 42 Or App at 324.

The lease agreements here do not contain an explicit option to purchase the vehicles. However, on termination of each lease by expiration of the three-year lease term or by election of either party or default of the lessee, Heinrich, the vehicles were to be returned to plaintiff for sale at the highest available wholesale price. If the price exceeded the residual value at the time of termination, Heinrich would be entitled to the excess. If the vehicles were sold for less than the residual value, Heinrich would be responsible for the deficiency. The residual value was the estimated wholesale value of the vehicles at the end of the three-year term, $2,500 per vehicle, plus an adjustment for amounts remaining due under the contract in the event of early termination.

■      The practical effect of this form of lease, although not expressed as a purchase option, is to afford the lessee an opportunity to buy the leased property by paying to the lessor on termination of the lease an amount equal to the residual value. Because the wholesale value of the vehicles is not a nominal amount, however, the existence of the "option" to retain the vehicles is not, in and of itself, determinative of whether the leases here were intended as security. ORS 71.2010(37); *All-States Leasing v. Ochs, supra,* 42 Or App at 325. Accordingly, other factors must be considered.

■      First, we note that Heinrich acquired an equity in the leased vehicles. If the vehicles appreciated in value (or depreciated less than anticipated over the lease term) the resulting gain on disposition would have been realized by Heinrich, not by plaintiff. On the other hand, if the vehicles depreciated more than expected, Heinrich would have borne the entire loss. Because Heinrich had a stake in the value of the vehicles on termination of the leases, it had an equity interest in them. *See In Re Niemi,* 27 Bankr 215, 36 UCC Rep Serv 629 (1982). Furthermore, because the residual value would be adjusted in the event of early termination in order to enable plaintiff to recover the full amount owed under the contracts, the "sale on termination" clause was the functional equivalent of an acceleration clause.

The leaseback agreements also provide that Heinrich would bear the entire risk of loss of or damage to the vehicles, insure them and pay all taxes imposed on their ownership. Heinrich selected and priced the vehicles[3] that were purchased by plaintiff for the express purpose of leasing them back to Heinrich. As already mentioned, Heinrich would bear the loss if, on termination, the wholesale value of a given vehicle was less than its depreciated value. Those factors all lead us to conclude that the trial court did not err in holding that the leaseback agreements were intended as security for loans advanced to Heinrich. Accordingly, the priority of the parties must be resolved in accordance with the UCC.

Defendant contends that, under the UCC, it had a prior security interest in the vehicles and therefore a priority

---

[3] The vehicles were "sold" to plaintiff for $800 to $3,000 over the manufacturer's suggested retail price.

claim to the proceeds of the sale under ORS 79.7120(5) and (6)[4] by virtue of a security interest perfected before the sale-leaseback transactions. Plaintiff contends, however, that defendant's interest was cut off and that, if it was only a secured party, its security interest was perfected in April, 1982, when certificates of title were issued for the vehicles on which its interest was noted. *Former* ORS 481.413 (*repealed by* Or Laws 1983, ch 338, § 978) provided, in pertinent part:

"(2) [With exceptions not relevant here], the exclusive means of perfecting a security interest in a vehicle covered by a certificate of title is by application for notation of the security interest on the certificate of title in accordance with the provisions of this chapter.

"(3) A security interest in a vehicle may not be perfected as described under subsection (2) of this section but is subject to the perfection provisions under ORS chapter 79 if the debtor who granted the security interest is in the business of selling vehicles and the vehicle constitutes inventory held for sale."

Although we assume, without deciding, that as of April, 1982, plaintiff's security interest in the vehicles was perfected, whether its interest is prior to defendant's is determined under the provisions of the UCC.[5]

■ Plaintiff first contends that defendant's security

---

[4] ORS 79.3120(5) and (6) provide:

"In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

"(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

"(b) So long as conflicting security interests are unperfected, the first to attach has priority.

"(6) For the purposes of subsection (5) of this section a date of filing or perfection as to collateral is also a date of filing or perfection as to proceeds."

[5] *Former* ORS 481.413(4) (*repealed by* Or Laws 1983, ch 338, § 978) provided:

"Subject to ORS 481.518(1) to (5), the rights and remedies of all persons in vehicles covered by this section shall be determined by the provisions of the Uniform Commercial Code."

interest was cut off, because defendant authorized the transactions. It relies on ORS 79.3060(2):

> "Except where ORS 79.1010 to 79.5070 otherwise provide, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

It argues that defendant authorized the disputed transactions, either expressly under the terms of its security agreement or implicitly through the established course of dealing and understanding between defendant and Heinrich. That argument assumes that the transactions involved genuine sales and leasebacks. It is true that defendant authorized earlier transactions that used the same lease form; however, its authorization was subject to its being paid all amounts to which it was entitled under its security agreement.[6] Accordingly, we believe that plaintiff's reliance on ORS 79.3060(2) is misplaced as a matter of law.

We must determine plaintiff's priority in the light of our conclusion that these transactions between plaintiff and Heinrich were loans secured by a security interest in collateral. ORS 79.3060(2) applies to sales, exchanges or other dispositions authorized by the secured party. Here, the transactions were not sales or exchanges. Although they involved "other dispositions," they were not the kind of dispositions that would necessarily afford plaintiff priority. There was no evidence from which the jury could find that defendant had authorized a secured transaction having priority over its security interest—in other words, that defendant had agreed to subordinate its security interest. Therefore, there was no question for the jury on this point. Accordingly, it was not error to enter judgment for defendant, notwithstanding the jury's finding that defendant authorized the transactions.[7]

---

[6] Between 1974 and 1981, plaintiff purchased from and leased back to Heinrich a total of 55 vehicles pursuant to the terms of similar agreements.

[7] As a procedural matter, plaintiff contends that defendant did not lay the proper ground work for judgment n.o.v. by moving for a directed verdict on the issue of authorization. The contention is without merit. Defendant moved for a directed verdict "on all issues" at the close of its case. Defendant further objected to the jury instruction and verdict form submitting the issue of authorization to the jury. It is clear from the record that, when the trial court submitted the issue to the jury, it

■ Plaintiff next argues that, because there was evidence from which the jury could and did find that it was a "buyer in the ordinary course of business," it took title to the vehicles free of defendant's interest. ORS 79.3070(1) provides:

> "A buyer in ordinary course of business as defined in ORS 71.2010(9), other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by the seller even though the security interest is perfected and even though the buyer knows of its existence."

ORS 71.2010(9) provides:

> " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to the person is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. All persons who sell minerals or the like (including oil and gas) at wellhead or minehead shall be deemed to be persons in the business of selling goods of that kind. *'Buying'* may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but *does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."* (Emphasis supplied.)

Because the transaction here involved a "transfer * * * as security for * * * a money debt," plaintiff was not, as a matter of law, a buyer in the ordinary course.

Affirmed on appeal; cross-appeal held moot.

---

understood that defendant's motion for a directed verdict "on all issues" incorporated the issue of authorization. *See Crooks v. Payless Drug Stores,* 285 Or 481, 592 P2d 196 (1979); *Owens v. Haug,* 61 Or App 513, 658 P2d 523, *rev den* 294 Or 792 (1983).